**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ESTATE OF HASSIBA BELBACHIR,** | ) | |
| **Deceased, by ABDELKADER** | ) | |
| **RACHID BELBACHIR,** | ) | |
| **Administrator,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 C 50193** |
| **vs.** | ) | |
| | ) | **Judge Philip G. Reinhard** |
| **UNITED STATES OF AMERICA,** | ) | **Magistrate Judge P. Michael Mahoney** |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S RESPONSE TO UNITED STATES' MOTION TO DISMISS

The Court should deny the United States' motion to dismiss Plaintiff's Federal Tort

Claims Act suit. Plaintiff's complaint alleges sufficiently that federal employees were negligent,

willful and wanton, not only as to Ms. Belbachir's serious medical needs and risk of suicide but

also as to the inspection and enforcement of compliance with mandatory standards governing the

safe keeping and care of immigration detainees.

### I. MOTION TO DISMISS STANDARD OF REVIEW

Defendant's motion does not claim any insufficiency as far as identification of plaintiff's

claim or the legal basis upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969

(2007). Nor does the defendant argue that the factual allegations in the complaint are insufficient

to raise the possibility of relief above the "speculative level," assuming that all of the allegations

in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.

2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969.

The Court must accept as true all of the well-pleaded facts alleged by the Plaintiff and all reasonable inferences that can be drawn from those facts. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The Court must take the alleged facts in Plaintiff's complaint in the light most favorable to Plaintiff. *Doss v. Clearwater Title Co.*, 2008 U.S. App. LEXIS 26302 (7th Cir. 2008).

## II. THE STANDARD OF REVIEW DOES NOT ALLOW THIS COURT TO CONSIDER DEFENDANT'S EXHIBITS ON A MOTION TO DISMISS

Defendant has moved to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., which confines the Court to considering only the well pleaded allegations of the complaint. The Court may dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Nevertheless, Defendant has attached not one but four exhibits, urging the Court to apply an incorrect legal standard, and to consider this evidence without converting its motion into one for summary judgment.

The Court may consider evidence extraneous to the complaint under two narrow exceptions. Defendant invokes the narrow exception where a court may consider a document as part of the complaint if it is referred to in the complaint and is central to the claim.[1] The

---

[1]The other narrow exception allows the court to take judicial notice, but only of facts or documents which meet the following very restrictive criteria. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997). The Court may *not* take judicial notice of facts or documents that do not meet this very restrictive criteria, including for reasons of fairness, as set forth in *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002):

> What would not be cricket would be for the defendant to submit a document in support of his Rule 12(b)(6) motion that required discovery to authenticate or disambiguate; in such a case the judge would be required to convert the defendant's motion to a Rule 56 motion if he were minded to consider the document in deciding whether to grant the motion.

exception is "aimed at cases interpreting, for example, a contract" [*Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)], such as "where a claim arises from a contract or other written agreement between the parties, but the plaintiff neglected to attach all or certain relevant parts of that writing to the complaint, and where the complaint repeatedly refers to that writing." *Truhlar v. John Grace Branch # 825*, 2007 U.S. Dist. LEXIS (N.D. Ill.). The Seventh Circuit suggests the exception "is or should be limited to cases in which the suit is on a contract or the plaintiff, if he has not attached, has at least quoted from, the document later submitted by the defendant". *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

However, even in contract cases, the application of the exception is not a foregone conclusion. See, e.g., *Ameriquest Mortgage Co. v. Trans Union LLC*, 2008 U.S. Dist. LEXIS 18314 (N.D. Ill.) (refusing to consider contract filed by defendant as exhibit to motion to dismiss, accepting as true the allegations of the complaint, and denying motion to dismiss).

The purpose for allowing this narrow exception is to ensure that undeserving parties do not survive a motion to dismiss "by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Significantly, this narrow exception *"is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment."* *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis added).

This is not a contract action, it is a lawsuit pursuant to the Federal Tort Claims Act.

---

See also, *Doss v. Clearwater Title Co.*, 2008 U.S. App. LEXIS 26302 (7th Cir. 2008) (reversing order granting dismissal of Truth in Lending Act claim, finding court erred in taking judicial notice of contested deed).

Although the U.S. claims an "independent contractor exception," it is not the contract between the U.S. and McHenry County that is dispositive, and the U.S. admits that the exception does not apply to acts alleged to have been committed by federal employees themselves. As the Plaintiff describes below, the U.S. cannot avoid liability for its actions by hiding behind a contract with McHenry County to take physical custody of immigration detainees.

The cautionary admonitions of the *Levenstein* and *Tierney* courts apply here, such that this Court should refuse to consider the exhibits. When the Court accepts, as it must, Plaintiff's allegations as true, in the light most favorable to Plaintiff, and makes all reasonable inferences that can be drawn from those facts, it must deny Defendant's motion.

Plaintiff's complaint alleged that ICE employees knew at least three years prior to Ms. Belbachir's death that McHenry County Jail was rated deficient for lack of a written suicide prevention policy, a problem which was not remedied until after Ms. Belbachir's death. [Compl ¶12-23].

The Defendant is well aware that the 2004 Review, Government Exhibit 3, is in dispute, in that the Department of Homeland Security, Office of Inspector General, Report of Investigation into Ms. Belbachir's death, very much calls into question its validity.[2] (Synopsis, at page 9 of 11):

> The OIG investigation failed to disclose the existence of a written suicide policy
> for the MHCCC [McHenry County Correctional Center], as is required by ICE.

---

[2]There are additional documents which would add to the questionable validity of Government Exhibit 3, which are not before the Court, including a redacted version of the entire OIG report, which impugns the integrity of the review on which the defendant asks the Court to rely; an ICE review following Ms. Belbachir's death, concluding that McHenry County Jail still had no written suicide prevention policy; and other pertinent evidence.

4

> The OIG examination of the ICE report documenting the July 14-15, 2004, review of the MHCCC, and interview of its author, failed to produce evidence of such a policy. ICE officials were unable to produce any documentation of their prior receipt or review of this policy as was claimed in their report.

This exhibit therefore does not qualify for either exception. This is but one of many revelations which demonstrate the need for discovery prior to any determination of this case on the merits.

This Court must not consider Defendant's exhibits in ruling on the motion to dismiss, and instead must accept as true the allegations in Plaintiff's complaint.[3]

### III. THE WELL PLEAD FACTS IN PLAINTIFF'S COMPLAINT WARRANT DENIAL OF THE MOTION TO DISMISS

In its zeal to impress upon the Court the significance of its exhibits, the Defendant neglected to include in its memorandum Plaintiff's numerous allegations about U.S. government employees' conduct while Ms. Belbachir was in their custody and control *prior* to her detention at McHenry County Jail— allegations which are not related to or dependent on any of the exhibits filed by Defendant. Plaintiff alleged that ICE officials initially took custody of Ms. Belbachir on March 8, 2005, turned her over to a contract facility, which on March 9, returned her to the ICE facility at Broadview, from whence she was taken to McHenry County Jail. [Compl ¶6-8, 26]. Plaintiff alleged that government employees had notice of Ms. Belbachir's

---

[3]In the unlikely event that the Court converts the motion to dismiss into one for summary judgment, then the Court must allow the parties "a reasonable opportunity to present all the material that is pertinent to the motion," which means providing the parties with ample notice of the conversion as well as additional time to prepare and present materials in support of their respective positions. Rule 12(d), Fed. R. Civ. P. See, *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999). Consideration of matters outside the pleadings without allowing opposing litigants to supplement the record constitutes error. See *Carter v. Stanton*, 405 U.S. 669 (1972) (per curiam).

suicidal tendencies and risk of suicide. [Compl ¶8].

Plaintiff specifically alleged that federal officials failed to provide McHenry with complete medical records of Ms. Belbachir's March 9, 2005, hospital emergency room visit, and that federal officials failed to fully inform anyone at McHenry County Jail of her emergency room diagnosis and treatment. [Compl ¶7, 28]. Plaintiff also alleged that ICE detention standards applied to the Broadview ICE facility, whose chief was responsible for Ms. Belbachir's care. [Compl ¶57, 62]. In addition, Plaintiff alleged that ICE agents were aware of inadequate policies governing mental health screening at the Stone Park and Broadview ICE facilities, as well as inadequate policies to ensure that information about a detainee's physical and mental health be communicated among the various facilities housing the detainee. [Compl ¶78]. The complaint includes these acts and omissions as contributing to the proximate cause of Ms. Belbachir's death. [Compl ¶45, 52, 82-83].

Plaintiff alleged that ICE Detention Standards required all facilities housing ICE detainees to have a suicide prevention policy, and that government employees, aware of the standards and their obligation to comply with them, not only failed to enforce them at McHenry and at Broadview [Compl ¶10, 11, 57-71], but, knowing that McHenry, specifically, had no suicide prevention policy, continued to send ICE detainees— and Ms. Belbachir— to a place where their safe keeping could not be ensured. [Compl ¶12-21, 43, 72].

More specifically, the complaint alleged that ICE employees knew in 2002 that McHenry County Jail was rated deficient for lack of a written suicide prevention policy, a problem which was not remedied until after Ms. Belbachir's death. [Compl ¶12-23].

6

## IV. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE CONTRACTOR EXCEPTION TO FTCA CONSENT TO SUE DEFENDANT UNITED STATES

The "independent contractor exception" to the Federal Tort Claims Act does not protect the United States from Plaintiff's lawsuit. Plaintiff alleges specific conduct on the part of employees of Immigration and Customs Enforcement, a federal agency of the United States government. Further, the United States retains control and supervision over the detention facilities where immigration detainees are placed so that an agency relationship exists between the United States and McHenry County and Centegra. Therefore, the independent contractor exception does not bar Plaintiff's claims.

Defendants admit that "(t)o the extent that plaintiff is alleging negligence on the part of actual ICE employees...the contractor exception is not a bar." [Def. Memo, Dkt. 17-2, p. 15] Indeed, the leading Supreme Court case cited by Defendant was specifically remanded for consideration of the U.S. deputy marshal's negligence in the suicidal death of a federal prisoner while confined in a county jail. *Logue v. U.S.,* 93 S. Ct. 2215 (1973). The facts alleged in this case against ICE employees are remarkably similar to those alleged against the deputy marshal in *Logue.* Here, ICE employees were the only individuals responsible to Ms. Belbachir for a period of time prior to her admission to the McHenry County Jail. She was taken into physical custody initially by ICE employees and taken to Stone Park police department. [Compl ¶6]. ICE employees again took physical custody of her after she received emergency medical treatment and were solely responsible for her well being while she was at Broadview before she was transferred to McHenry County Jail. [Compl ¶8]. It is clear from the allegations of the complaint that Ms. Belbachir was exhibiting symptoms of serious medical needs during the intervening

hours while she was at Stone Park, and the inference is that those needs were pre-existing as well as ongoing. [Compl ¶27].

In addition, it cannot be assumed that McHenry County and Centegra officials were independent contractors rather than "persons acting on behalf of a federal agency" for purposes of FTCA liability. 28 U.S.C. §2671. Defendant admits that the United States may be liable for the conduct of a contractor if the Federal Government controls the physical performance or supervises the operations of the endeavor. [Def. Memo. Dkt. 17-2, p. 7]. The question of whether a defendant is a governmental employee or an independent contractor under the FTCA is a question of federal law. *Quilico v. Kaplan,* 749 F.2d 480 (7th Cir. 1984) The distinction turns on whether the principal (in this case ICE) has no authority to control the physical conduct of the agent (in this case McHenry County and Centegra officials) in the performance of the contract. *Quilico,* 749 F.2d at 483. Clearly ICE officials maintained authority to control the conduct of McHenry County and Centegra officials. ICE officials inspected the jail for compliance with mandatory Detention Standards. Additional discovery is required to determine to what extent ICE officials exercised their control over the conduct within the McHenry County Jail. The additional cases cited by Defendant are distinguishable on their specific facts. *U.S. v. Orleans,* 96 S.Ct. 1971 (1976)(Community Action Agency had complete control over operations of its own programs and therefore was not subject to FTCA); *Williams v. U.S.,* 50 F.3d 299 (4th Cir. 1995)(U.S. not liable for slip and fall injuries on leased premises caused by negligence of management company).

In a case cited by Defendants, the Seventh Circuit reversed summary judgment for the United States and found there were genuine issues of material fact whether the government "had

8

charge of" the work of a contracting construction company to re-roof buildings at Fort Sheridan. *Damnjanovic v. U.S.,* 9 F.3d 1270 (7th Cir. 1993). "There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Damnjanovic* at 1277. See also, *Dugan v. Coastal Industries and U.S.,* 96 F.Supp.2d 481 (independent contractor exception did not apply to slip and fall because U.S. responsible for inspection and supervision); *Sandoval v. U.S.,* 980 F.2d 1057 (5th Cir. 1993)(U.S. may be liable for negligently placing victim in contract facility where he was exposed to improper conduct of guards and other prisoners resulting in physical injury); *Meckley v. U.S.,* 1992 U.S. App. LEXIS 9033 (4th Cir. 1992)(U.S. may be held liable for negligently subjecting an inmate to prison conditions which may compromise his safety).

Certainly at the motion to dismiss stage it is not clear that the U.S. did not retain sufficient supervisory rights over the McHenry County Jail, and that McHenry and Centegra officials were not free to house immigration detainees in any way they saw fit without regard to the U.S. Therefore, the U.S. may be liable for the conduct alleged in Plaintiff's complaint, the contractor exception does not apply, and the Defendant's motion should be denied with respect to this argument.

### V. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE DISCRETIONARY FUNCTION EXCEPTION

#### A. ICE Detention Standards are Mandatory

Defendant wrongly asserts that Plaintiff failed to identify a statute, regulation or policy under which ICE employees had mandatory duties to Ms. Belbachir. Contrary to defendant's argument, the ICE Detention Standards clearly fall within the Supreme Court's description of a

"federal statute, regulation, or policy [that] prescribes a course of action for an employee to follow." *United States v. Gaubert*, 499 U.S. 315, 346 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The U.S. Department of Homeland Security touts this policy on its website: "ICE, through an aggressive inspections program, ensures facilities utilized to detain aliens in immigration proceedings or awaiting removal to their countries do so in accordance with ICE National Detention Standards." http://www.ice.gov/partners/dro/dmp.htm.

See also, http://www.nicic.org/pubs/2003/period235.pdf.

The Detention Standards are full of mandatory language. For example, the Detention Standard governing Suicide Prevention and Intervention provides in the first paragraph:

> All staff working with INS detainees in detention facilities will be trained to recognize signs and situations potentially indicating a suicide risk. Staff will act to prevent suicides [...]. Any clinically suicidal detainee will receive preventive supervision and treatment.

Cases cited by the defendant have nothing to do with whether the Detention Standards contain mandatory language, as those cases address other statutes, regulations and policies, as in *Daigle v. Shell Oil Company*, 972 F.2d 1527 (10th Cir. 1992) (Comprehensive Environmental Response, Compensation, and Liability Act), *Irving v. United States*, 162 F.3d 154 (1st Cir. 1998) (Occupational Health and Safety Act), *Johnson v. United States*, 47 F.Supp.2d 1075 (S.D. Ind. 1999) (duties of law enforcement agents in executing arrest warrants), *Cassens v. St. Louis River Cruise Lines*, 44 F.3d 508 (7th Cir. 1995) (Coast Guard safety regulations), and *ALX El Dorado, Inc. v. United States*, 36 F.3d 409 (5th Cir. 1994) (banking and financial statutes and regulations).

10

### B. Government Employees Failed to Act in Accordance with Specific Mandatory Directives

The exception applies only if two requirements are fulfilled: first, it applies only when the act in question "involves an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991).[4] However, where a "federal statute, regulation, or policy prescribes a course of action for an employee to follow" and the employee deviates from that course, the exception does not apply. *Gaubert*, 499 U.S. at 322. When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply. *Berkovitz v. United States*, 486 U.S. 531, 546 (1988). The exception also does not apply where government employees act in direct contravention of policy. See, *Palay v. United States*, 349 F.3d 418 (7th Cir. 2003).

This same lesson is taught by *Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008), cited by the defendant, where the court vacated an order granting the government's summary judgment motion, and expounded on the exception. There, in an FTCA action, a prisoner alleged that Bureau of Prisons employees were negligent in failing to protect him from another prisoner from whom they had ordered him separated. The court stated that the discretionary function exception would not apply if there was in fact a separation order: "As long as a valid separation order is in effect, there is no discretion left to operate on that narrow question." *Parrott,* 536 F.3d at *26.

---

[4]Given that the governing policy is mandatory, and that Plaintiff alleged failure to comply with and/or violation of a specific mandatory directive, there is no need to reach the second prong, as that requires evaluation of whether a discretionary act was performed pursuant to policy. Defendant's example of *Cassens v. St. Louis River Cruise Lines*, 44 F.3d 508 (7th Cir. 1995), is unavailing, as the allegedly negligent Coast Guard certification of a cruise boat— in spite of its lack of handrails— involved discretion, whereas here, there was no discretionary act.

Plaintiff's complaint alleged that government employees failed to act in accord with a specific mandatory directives. Plaintiff clearly alleged that federal employees failed to act in accord with the ICE Detention Standards in the inspections of McHenry County Jail. Plaintiff also alleged that ICE inspectors and others acted in direct contravention of the Standards when they assigned Ms. Belbachir to McHenry County Jail, knowing full well it was not in compliance with the Standards. [Compl ¶11-21].

Plaintiff additionally alleged that government employees also failed to act in accord with the ICE Detention Standards when Ms. Belbachir was in their custody at the Broadview facility and in moving her from Stone Park to Broadview to McHenry County. [Compl ¶6-8, 26, 57, 62, 78].

The complaint also alleged that government employees failed to act in accord with and/or violated ICE Detention Standards when they failed to enforce Detention Standards requiring a suicide prevention policy at McHenry County Jail [Compl ¶10, 11, 57-71], and when they continued to send ICE detainees— and Ms. Belbachir— to McHenry County Jail, in spite of their knowledge that no such policy had been approved. [Compl ¶12-21, 43, 72].

Clearly, the discretionary function exception does not apply, and Defendant's motion should be denied with respect to this argument.

### C. In the Alternative, Plaintiff Must be Permitted Discovery to Develop Facts Consistent with his Complaint that Would Entitle Him to Relief

The decision in *Palay* is instructive. There, an injured federal prisoner alleged in an FTCA action that guards were negligent in failing to protect him. The court denied the government's motion to dismiss seeking application of the discretionary function exception,

12

stating, "it is easy to imagine a scenario in which MCC officials behaved in a negligent fashion, but without making the types of discretionary judgments that the statutory exception was intended to exempt from liability," noting that the inspector may not have done the inspection he claimed to have done, out of laziness or haste, distraction or inattentiveness, none of which would meet the criteria for application of the exception. *Palay*, 349 F.3d at 432. The *Palay* court then wisely permitted the plaintiff to develop evidence of the circumstances that led to his injuries, because there could be a set of facts consistent with his complaint that would entitle him to relief. *Palay*, 349 F.3d at 432.

Similarly, the court in *Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000), offers guidance in applying the exception in the inspection context. A federal prisoner, injured when a weight machine failed and injured him, was allowed to proceed with his FTCA action alleging that an inspector failed to carry out the inspection program with appropriate care. That court wisely denied the government's motion to dismiss after determining that it was too early in the litigation to be able to interpret the allegations of negligent inspection, finding that the discretionary function exception would not apply if, for example, the inspector's lapses were due to laziness or careless inattentiveness.

*Coulthurst* and *Palay*, as well as *Parrott*, basically warn against short-circuiting a plaintiff's ability to develop his theory of negligence to establish the inapplicability of the discretionary function exception. That warning very much applies to the case at bar. Significant evidence relevant to this issue has been developed, and will undoubtedly be further developed through discovery. While the posture of this litigation— with Plaintiff facing a Rule 12(b)(6) motion to dismiss— makes it impossible to bring that evidence before the Court, Plaintiff

13

beseeches the Court not to preclude him, at this early stage of the litigation, from developing his

theory of negligence to which the discretionary function exception would not apply.

## VI. DEFENDANT'S EMPLOYEES VIOLATED DUTIES UNDER ILLINOIS LAW AND IT IS THEREFORE NOT ENTITLED TO IMMUNITY

Suits brought under the FTCA are governed by the law of the state in which the wrongful

act or omission allegedly occurred. 28 U.S.C. § 1346(b); *Midwest Knitting Mills v. United States*,

950 F.2d 1295, 1297 (7th Cir. 1991). Under Illinois law, a plaintiff alleging wrongful conduct

must prove that: 1) the defendant owed a duty to the plaintiff; 2) the defendant breached that

duty; 3) the breach proximately caused the plaintiff's injuries; and 4) the plaintiff did, in fact,

suffer damages. *Adams v. Northern Illinois Gas Company*, 211 Ill.2d 32, 43 (2004).

Under the FTCA, "the United States shall be liable . . . in the same manner and to the

same extent as a *private* individual under like circumstances." 28 U.S.C. § 2674. *Damnjanovic

v. U.S.,* 9 F.3d 1270, 1272 (7th Cir. 1993)(emphasis added), cited by Defendant. The FTCA does

not set forth the limitation that liability only extends to the United States in the same manner or

extent as a public employee but specifically extends liability to the same extent as a private

person. Immunities conferred upon public employees or officials have not been extended to the

United States.

Defendant attempts to invoke the special immunities of the Illinois Tort Immunity Act,

citing to 745 ILCS 10/4-103, which grants immunity for failures to provide "sufficient

equipment, personnel, supervision or (jail) facilities," and does not apply to the types of willful

and wanton failure to provide medical care which are alleged in Plaintiff's complaint. The cases

cited by Defendant are distinguishable and involve allegations against a sheriff solely for failure

to provide adequate personnel and supervision. *Payne v. Churchich,* 161 F.3d 1030 (7th Cir. 1998); *Jefferson v. Sheahan,* 279 Ill.App.3d 74 (1st Dist. 1996); *Barton v. Randolph County,* 2007 U.S. Dist. LEXIS 3333 (S.D. Ill.). These cases address the immunities outlined in 745 ILCS 10/4-103 and not allegations which implicate immunities in 745 ILCS 10/4-105. The allegations of the plaintiff in *Barton v. Randolph County* consisted of providing a prisoner with a telephone that the prisoner subsequently used to strangle himself. No allegation implicated the issue of failure to provide medical care. The Illinois Tort Immunity Act does not immunize an individual who observes the need for immediate care and willfully and wantonly fails to summon medical care. *Estate of Carlock, Jr. v. Williamson,* 2008 U.S. Dist. LEXIS 94937,*9 (C.D. Ill.).

Plaintiff here specifically alleges willful and wanton conduct in failing to attend to the medical needs of suicidal detainees in general and Ms. Belbachir in particular. [Compl ¶83]. The Seventh Circuit held that "the Illinois Tort Immunity Act does not protect the Sheriff from allegations that he acted in a willful and wanton manner." *Payne,* 161 F.3d at 1046. Moreover, the Illinois Tort Immunity Act specifically sanctions a claim for failure to furnish medical care for prisoners. 745 ILCS 10/4-105.  Section 4-105 provides immunity for failures to provide medical care for prisoners unless the "employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care."

Contrary to Defendant's assertions, Plaintiff alleged that Ms. Belbachir was in need of immediate medical care, and Defendant's employees willfully and wantonly failed to take reasonable action. Plaintiff was seen in the emergency room in the middle of the night, and

15

certainly was in need of follow up care and treatment. Specifically, ICE employees did nothing for her during an entire day, exacerbating her condition prior to dumping her into the McHenry County Jail. ICE employees failed to document her condition or treatment, failed to provide her any additional treatment and failed to communicate her condition and treatment to McHenry County personnel. [Compl ¶¶8, 28]. Furthermore, ICE employees, as a matter of policy, failed and refused to ensure that this communication occurred, failed and refused to ensure that detention standards were followed, and failed and refused to ensure the safekeeping of detainees at risk for suicide detained at McHenry County Jail, which resulted in the death of Ms. Belbachir. [Compl ¶11, 15, 18-24, 28].

The standard of review on Defendants' motion to dismiss requires that Plaintiff's allegations and all reasonable inferences to be drawn therefrom must be taken in the light most favorable to Plaintiff. This is particularly crucial here where Plaintiff has been thwarted from even discovering which individual federal employees came into contact with Ms. Belbachir and willfully and wantonly failed and refused to provide her with proper medical care in response to her risk of suicide. The Court should deny the defendant's motion with respect to Plaintiff's allegations of violations of state law.

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss in its entirety.

Dated: January 8, 2009                    Respectfully submitted,

                                          /s/ Jan Susler
                                          Janine L. Hoft
                                          Jan Susler

People's Law Office
1180 N. Milwaukee Avenue
Chicago, Illinois 60622
773/235-0070

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Jan Susler, one of Plaintiff's attorneys, hereby certifies pursuant to Rule 7.1, Local Rules of the Central District of Illinois, that the WordPerfect word processing program on which this memorandum was prepared indicated the character count to be 25,573, and the word count to be 4,842, both of which are less than the Rule's type volume limitation of 45,000 characters and 7,000 words. The memorandum therefore complies with the Rule.

Dated: January 8, 2009              /s/ Jan Susler
                                    Jan Susler
                                    One of Plaintiff's Counsel