UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1392 |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge P. Michael Mahoney |
| Defendant. | ) | |

**PLAINTIFF'S MOTION TO COMPEL UNITED STATES
TO FULLY ANSWER PLAINTIFF'S DISCOVERY AND
PRODUCE DEPONENT DAN YOUNG**

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 50193 |
| vs. | ) | |
| | ) | Judge REINHARD |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge MAHONEY |
| Defendant. | ) | |

### UNITED STATES' RESPONSE TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### FIRST SUPPLEMENT[1]

United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for

the Northern District of Illinois, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

hereby submits the following responses to plaintiff's First Set of Interrogatories:

### DEFINITIONS AND INSTRUCTIONS

A. Each interrogatory seeks information available to the defendants, their attorneys or agents, and all persons acting in their behalf. Accordingly, as used herein, the terms "defendants," "you," and "your" refer without limitation to the defendants, their attorneys and agents, and all persons acting in their behalf. Each of the interrogatories shall be deemed to be continuing in the manner provided by law.

B. As used herein, "person" means an individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity. When the term "identify" or "identification" is used in conjunction with the term "person," or if the answer to any interrogatory herein refers to a person (as defined herein), you are to state each such person's: (1) full legal name, (2) present or last known address and telephone number (business or residential), (3) occupation, job title, business affiliation and/or nature of the business, and (4) age (whether actual or estimated).

C. As used herein, "document" means any writing or other tangible thing known to you

---

[1] **Supplemental information provided in bold typeface.**

1

whether or not it is in your custody, possession, or control. When the term "identify" or "identification" is used herein in conjunction with the term "document," or if the answer to any interrogatory herein refers to a document (as defined herein), you are to state, with respect to each such document: (1) the title, date, number or other identifying information appearing on the face of the document, (2) the date that the document was prepared, (3) the identity of the person who has custody or control over the document, (4) the name(s) of all authors, recipients, and other persons who have seen the document, and (5) the nature and substance of the document, all with sufficient particularity to enable it to be identified in a request to produce; or in lieu thereof, you may produce the document, provided that each document is appropriately marked to identify the interrogatory to the document is responsive. If no responsive document exists, please so state.

D. As used herein, "communication" includes, without limitation, communications by whatever means transmitted, (*i.e.* whether oral, written, electronic, or other methods if used), as well as any note, memorandum, or other record thereof. When the term "identify" or "identification" is used in conjunction with the term "communication," you are to state, with respect to each such communication:
(1) the identity of the person(s) making it or contributing in any fashion to its creation;
(2) the identity of the recipient and of any person(s) before whom it was made or who witnessed it or who have knowledge of it;
(3) an identification of all documents reflecting, referring, or relating to it;
(4) the nature, substance, and contents of the communication; and
(5) the date of the communication.

E. If any document of identification of any document or oral communication is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, provide sufficient information (including, but not limited to, the information specified in paragraph C above) to determine the identity of the document or oral communication and state the basis of any asserted claim of privilege.

F. As used herein, "date" shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation (including relationship to other events).

G. If you object to part of an interrogatory and refuse to answer that part, state your objection and answer the remaining portion of that interrogatory. If you object to the scope or time period, state your objection and answer the interrogatory for the scope or time period that you believe is appropriate.

1. State the full name, address and job position of the person answering these interrogatories and each person who has provided information or otherwise assisted in answering these interrogatories.

ANSWER: Glenn Triveline, SDDO; Chris McDaniels, DO; Sean Nagel, SIEA; James Squires, Assistant Port Director. Contact with these persons should be made through undersigned

2

counsel.

**Supplement – James Squires, Chief CBP Officer, Dan Young, Brent Kriehn, James Bond, Dan Rodriguez, Robert Podgorni, George Hernandez, Russell Milton, Jovaka Thompson, Michael Boland, Lori Glud, Deborah Achim, various agency legal counsel.**

2. With regard to every witness, please state:
   a) The full name, address, and telephone number of each person who witnessed or claims to have witnessed any of the events, conduct, injuries, or damages alleged in the complaint, your answer, and your defenses, and state the nature and substance of their knowledge;
   b) The full name, address, and telephone number of each person who was present or claims to have been present during any of the events, conduct, injuries, or damages alleged in the complaint, your answer, and your defenses, and state the nature and substance of their knowledge;
   c) The full name, address, and telephone number of each person who has, claims to have, or is believed by you to have any knowledge of the events, conduct, injuries, or damages alleged in the complaint, as well as alleged in your answer and defenses, or any other facts relating to this litigation, and state the nature and substance of their knowledge; and
   d) The full name, address, and telephone number of all persons whom you intend to and/or may call as witnesses at the trial of this matter and identify the subjects of their testimony.

ANSWER: In response, the United States refers plaintiff to the persons, and the subject of information for each provided in Defendant's Initial Rule 26(a)(1) Disclosures and First Supplemental Rule 26(a)(1) Disclosures, as well as those witnesses disclosed in plaintiff's Rule 26(a)(1) Initial Disclosures, and those witnesses disclosed by the parties in Rule 26(a)(1) Disclosures in 06C1392.

3. Please identify the organization chart or chain of command, applicable to the year 2005; setting forth each employee identified above or in any 26(a) initial disclosures and including who had supervisory responsibilities over who.

ANSWER: The United States objects to interrogatory 3 as it is not reasonably calculated to lead to the discovery of admissible evidence in support of plaintiff's claim of negligence brought under the Federal Tort Claims Act. The United States further objects to interrogatory 3 as it is overly broad in time and scope to the extent that it seeks the information for the entire year 2005. The United States further objects to interrogatory no. 3 to the extent that said interrogatory seeks information better suited for a deposition setting.

4. Please identify any and all policies and procedures, applicable to the year 2005; with regard to communication between United States and contract facilities, including relating to transfer

3

and transportation of detainees, communication of information possessed of detainees and relating to the health care of detainees.

ANSWER: The United States objects to interrogatory 4 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 4 as it is overly broad in scope as to its request for information regarding communications by the "United States". The United States further objects to the extent this interrogatory seeks a narrative better suited for a deposition. Subject to, and without waiving its objections, the United States responds that the Detention Operation Manual 2000 provides some policy and procedure guidance to the extent it is applicable to a particular DHS or contract facility. Generally, the communication procedures can be described as follow: Customs and Border Patrol at O'Hare Airport (CBP O'Hare) communicated to Broadview Service and Staging Area (BSSA) and contract facilities concerning detainee matters through the use of Form I-203. BSSA communicated to contract facilities through the use of the Form I-203 and through the preparation of written lists sent to contract facilities to identify detainees needing transfer and/or transportation to BSSA. Medical information, when known and/or available would be transmitted with the detainee. However, the subject of inquiry contained in this interrogatory is not suited to a narrative interrogatory response and is better suited to a deposition setting of a qualified witness.

**Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to Interrogatory number 4.**

**Supplement - subject to and without waiving its objection to Interrogatory number 4, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and Deportation Officer's Field Manual, bates numbered 002836-002869.**

**Supplement - subject to and without waiving its objection to Interrogatory number 4, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in place in March 2005 bates numbered 002870-002887.**

5. Please identify any and all policies and procedures, applicable to the year 2005; for the immigration detainees' use of translation services, including but not limited to a description of the services, how such services are accessed, what communications are made before and after the services and any limitations or restrictions on the services.

ANSWER: The United States objects to interrogatory 5 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 5 as it is not reasonably calculated to lead to the discovery of admissible evidence because through investigation completed thus far, it has been reported that Ms. Hassiba Belbachir communicated in

English with employees assigned to CBP and ICE who had verbal contact with her. Subject to, and without waiving its objections, the United States responds that translation services were obtained through a variety of methods at CBP and BSSA including but not limited to telephone language line services, the use of CBP and BSSA employees, the use of airport and airline personnel, and the use of other detainees with fluency in the language needed. Investigation continues.

**Supplement - Translation services are provided by the DRO translation unit in New York City or by AT&T Translation Services as a backup.**

6. Please identify any and all policies and procedures, applicable to the year 2005, concerning notifications to anyone, including consulates, of the status and/or detention of immigration detainees.

ANSWER: The United States objects to interrogatory 6 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to interrogatory 6 as it is overly broad in scope. Plaintiff's claim alleging failure to provides consular notification to consulates, or to Ms. Hassiba Belbachir was dismissed.

**Supplement - the Department of Homeland Security Federal Regulation in effect on March 9, 2005, 8 CFR 236.1 is attached.**

7. State the name and job position of each individual who came in contact with Hassiba Belbachir and those who had any responsibility for her case.

ANSWER: The United States objects to interrogatory 7 as it is overly broad in scope, and vague and ambiguous as phrased to the extent it seeks information concerning "those who had any responsibility for her case." Subject to, and without waiving its objections, the United States refers plaintiff to the persons, and the subject of information for each provided in Defendant's Initial Rule 26(a)(1) Disclosures and First Supplemental Rule 26(a)(1) Disclosures, specifically Dan Rodriguez, IEA; Sean Nagel, SIEA; Dan Bobak, IEA; Michael Boland, CBPO; "JT", CBPO; Brad Lister, ICE Special Agent; Brent Kriehm, DO. Investigation continues.

**Supplement - "JT" has been identified as Jovaka Thompson**
**Supplement - See also the additional information previously provided by letter dated February 11, 2010.**

8. Identify the following individuals by job description in March 2005 and describe what contact they had with Hassiba Belbachir and what role they played in Hassiba Belbachir's pending immigration case: Deborah Achim, Carl Ambrosen, Don Bobak, James Bonds, Ms. Bretz, Juan Cruz, Mary Yvonne Evans, Fount Hankle, Jr., John Koren, Brent Kreihn, Wesley Lee, Chris McDaniel, Sean Nagel, Lorenzo Rivera, John Torres, Glenn Triveline, Rebecca Walton, William Wennberg, Dan Young, and Jose Louis Zamora.

ANSWER: The United States objects to interrogatory 8 as it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objections, The United States responds that Deborah Achim, FDO; Carl Ambrosen, Port Director; Don Bobak, IEA; James Bonds, DO; Juan Cruz, DO; Mary Yvonne Evans, Brent Kreihm, DO; Wesley Lee, Chris McDaniels, DO; John Torres, Glenn Triveline, SDDO; William Wennberg, CIEA; and Dan Young, OIG Inspector; have no recollection of having direct contact with Ms. Belbachir prior to her death. Investigation continues.

**Supplement - See the additional information previously provided by letter dated February 11, 2010.**

9. Identify the reviewers of the McHenry County Jail for ICE for each of the years between 2002 and 2007, and state which review the individual was responsible for.

ANSWER: The United States objects to interrogatory 9 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to interrogatory 9 as it is overly broad in scope and time. Subject to, and without waiving its objection, Brent Kriehm, Chris McDaniels, James Bond performed McHenry County Jail Annual Detention Reviews during the period 2002 through 2005.

**Supplement - See the additional information previously provided by letter dated February 11, 2010. See also materials which were produced on February 11, 2010, bates numbers 001626-001944.**

10. Identify the author(s) of the Office of Inspector General report on the investigation into the death of Hassiba Belbachir.

ANSWER: The United States objects to interrogatory 10 as it is vague and ambiguous as phrased to the extent it seeks the "author(s)" of the subject report. The report itself is produced in response to plaintiff's First Request for Production of Documents.

11. Describe the policies and procedures for any individual taken into I.C.E. custody from O'Hare International Airport in 2005, including those applicable to Broadview Service Staging Area; concerning intaking detainees into immigration custody, including any intake and screening process, interview for potential immigration relief, court procedures, transfer to contract facilities, classification system, monitoring and provision of health and other services.

ANSWER: The United States objects to interrogatory 11 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 11 as it is overly broad in scope. The United States further objects to interrogatory 11 as it is vague and ambiguous as phrased to the extent it seeks information concerning "intaking detainees into immigration custody". The United States further objects to the extent this interrogatory seeks a narrative better suited for a deposition. Subject to, and without waiving its objections, the United

6

States responds that the Detention Operation Manual 2000 provides some policy and procedure guidance to the extent it is applicable to a particular DHS or contract facility. Generally, the procedures followed by CBP O'Hare when detaining an alien immigrant are documented in the Alien File. The procedures followed by BSSA when transferring and/or transporting an alien immigrant, to include classification are documented in the Detention Folder. Medical information, when known and/or available would be transmitted with the detainee. However, the subject of inquiry contained in this interrogatory is not suited to a narrative interrogatory response and is better suited to a deposition setting of a qualified witness. Investigation continues.

**Supplement - CBP is responsible for inspecting persons seeking entry to the United States. If an alien arriving at O'Hare appears to be inadmissible or removable from the United States, the alien may be referred from the "primary" inspection lane to a "secondary" inspection area where officers can perform a more thorough inspection of the alien. Under certain circumstances, an alien determined to be inadmissible may be returned home without further immigration proceedings. In that case, the alien will remain in the secondary area to await a return flight. In other circumstances, the alien may be issued a "Notice to Appear" for further immigration proceedings and be allowed to leave. However, there are circumstances when an inadmissible or removable alien must be detained for a longer period of time to await further immigration proceedings.**

**CBP does not engage in the long-term detention of aliens and does not have oversight responsibility over local detention facilities contracted by Immigration and Customs Enforcement, Office of Detention and Removal Operations ("ICE/DRO"). If an inadmissible or removable alien is subject to detention, CBP will hold the alien temporarily before transferring custody of the alien to ICE/DRO. That transfer may be done directly by transferring the alien to the ICE/DRO or indirectly by transferring the alien to a detention facility contracted by ICE/DRO. ICE/DRO provides CBP with a list of its contract facilities. CBP contacts those facilities by telephone when needed to determine if space is available. Typically, CBP contacts the closest facility first. In March 2005, the closest contract facility was the Stone Park Police Department.**

**Often, an alien awaiting transfer to ICE/DRO will be allowed to wait in the secondary inspection area waiting room. Although the waiting room area is a secure space, it is not a detention cell; it is the same location where aliens who have been referred from the primary lane are seated while awaiting their secondary inspection. This area is under the constant supervision of the CBP officers and supervisors assigned to the secondary area. Thus, an alien seated in the secondary inspection area while awaiting transfer to ICE/DRO will be monitored by those officers and supervisors. However, the Agency does not maintain a "detention log" for aliens waiting in the secondary inspection area waiting room. Further, the waiting room is not monitored by a video or audio device. Likewise, the Agency does not maintain records of calls made or received by an alien waiting in the secondary inspection area waiting room.**

**O'Hare does have a limited number of detention cells. When an alien is placed in a detention**

7

cell, the responsible officer will generate an electronic "Inspection Operation Incident Log" ("IOIL"). In addition, an alien placed in a detention cell is monitored at least every 15 minutes and the officer's observations are recorded in a detention log. The detention cells are also monitored by video cameras. However, the video is not recorded.

In this case, it appears that Ms. Belbachir was admitted to the United States in February 2005 under the Visa Waiver Program by presenting a French passport. Soon thereafter, she departed the United States from Chicago on a flight to Manchester, England. British authorities determined that Ms. Belbachir's French passport was fraudulent and refused to admit her. On March 8, 2005, Ms. Belbachir was returned to the United States on a flight bound for O'Hare. Upon her return, it appears that Ms. Belbachir was sent to the secondary area to process her for removal from the United States under the Visa Waiver Program. Ordinarily, an alien removed under the Visa Waiver Program is not entitled to a hearing before an immigration judge. Because Ms. Belbachir claimed asylum, she had to be detained for a credible fear determination and further immigration proceedings. Therefore, Ms. Belbachir was transferred to the Stone Park Police Department, the nearest ICE/DRO contract facility. A search of the O'Hare detention logs for the year 2005 does not reveal any entries pertaining to Ms. Belbachir. Likewise, there is no IOIL pertaining to Ms. Belbachir. These facts indicate the Ms. Belbachir was allowed to await her transfer to the Stone Park Police Department in the secondary inspection area waiting room. Chief CBP Officer James Squires can confirm the absence of these records.

Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to Interrogatory number 11.

Supplement - subject to and without waiving its objection to Interrogatory number 11, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and Deportation Officer's Field Manual, bates numbered 002836-002869.

Supplement - subject to and without waiving its objection to Interrogatory number 11, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in place in March 2005 bates numbered 002870-002887.

Produced herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the IO95 Inspection Results for Ms. Belbachir bates numbered 002749.

12. Describe any training in identifying detainees with suicidal tendencies or those at risk for suicide and identify the person or person(s) who conducted such training during the years 2000 through 2006.

8

ANSWER: The United States objects to interrogatory 12 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 12 as it is overly broad in scope. The United States further objects to the extent this interrogatory seeks a narrative better suited for a deposition. Subject to, and without waiving its objections, the United States responds that each employee as identified in the United States' Rule 26(a)(1) disclosures, who had contact with Ms. Hassiba Belbachir was trained through a Federal Law Enforcement Training Center or similar federal training program prior to, or shortly after his or her initial assignment. The description of said training as to identifying detainees with suicidal tendencies or those at risk for suicide , and as to identifying the person or person(s) who conducted the training are dependant upon when such training was received and better suited to a deposition setting. Employees who had direct contact with Ms. Belbachir, may have also received on the job training throughout their career. Investigation continues.

**Supplement - Investigation continues to identify training materials and instructors from 2002-2006.**

13. With regard to every civil and/or criminal lawsuit, filed in 2000 to the present, related to the provision of medical, including mental health, care; attempted suicide; and/or any death in custody regarding any immigration detainee in which the entity has participated as a party, for each state:

> a) The case number and title of case;
>
> b) The name of the plaintiff and his/her attorney;
>
> c) The incident which formed the basis for the complaint and the specific allegations regarding your conduct;
>
> d) The status of the suit;
>
> e) If resolved, the disposition.

ANSWER: The United States objects to interrogatory 13 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 13 as it is overly broad in scope and time.

14. State the full name and address of each expert you intend to call at trial and describe the subject matter on which each expert is expected to testify. As to each expert, state:

> a) Each and every opinion and conclusion and the specific grounds therefore including a list of all the information, documents, studies, reports, testimony, treatises, computerized information and other materials reviewed and/or relied upon in reaching each of these opinions and conclusions;
>
> b) Any additional materials which the expert intends to review prior to her/his testimony in this case;
>
> c) Each expert's qualifications;
>
> d) The date on which each expert was first contacted by you or your counsel with regard to this case and the date on which she or he first offered the above listed opinions and conclusions.

9

ANSWER: Unknown at this time. The United States specifically reserves the right to provide information responsive to this request at a later date and pursuant to this Court's docketed Case Management Orders. Investigation continues.

15. Do you know of any documents, objects, and/or tangible things which are not presently within your possession or control which, if they were, would be producible pursuant to plaintiffs' First Rule 34 Demand for Production of Documents and Tangible Things? If so, describe in detail such documents, objects, and/or tangible things and indicate who (name, address, and telephone number) is the present custodian of these items.

ANSWER: The United States objects to interrogatory 15 to the extent that it is directed at attorney-client communications, or documents protected by the work product privilege, deliberative process privilege, or law enforcement investigative privilege. The United States further objects to interrogatory 15 as it is overly broad in scope. Subject to, and without waiving its objections, the United States is not aware of any responsive documents at this time other than disclosed in these responses and the accompanying document request, and disclosed by the parties to 06C1392. Investigation continues.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: *Monica V. Mallory*

MONICA V. MALLORY
Assistant United States Attorney
308 West State Street, Room 300
Rockford, Illinois 61101
(815) 987-4444

10

## CERTIFICATE OF SERVICE

I, MONICA V. MALLORY, certify that on April 23, 2010, I caused the foregoing United

States Response to Plaintiff's First Set of Interrogatories, First Supplement, to be sent via Federal

Express to:

Jan Susler
Janine Hoft
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60622

and also sent by Federal Express to the following counsel in 06C1392 pursuant to consolidated
discovery order.

Arthur J. Reliford
Susan E. Sullivan
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611

George J. Casson, Jr.
Clifford Gary Kosoff
O'Halloran, Kosoff, Helander & Geitner, P.C.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062

MONICA V. MALLORY
Assistant United States Attorney
308 West State Street - Room 300
Rockford, Illinois 61101
815-987-4444

11

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1392 |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge P. Michael Mahoney |
| Defendant. | ) | |

PLAINTIFF'S MOTION TO COMPEL UNITED STATES
TO FULLY ANSWER PLAINTIFF'S DISCOVERY AND
PRODUCE DEPONENT DAN YOUNG

# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 C 50193 |
| vs. | ) | |
| | ) | Judge REINHARD |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge MAHONEY |
| Defendant. | ) | |

## UNITED STATES RESPONSE TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## FIRST SUPPLEMENT[1]

United States of America, Department of Homeland Security's Immigration and Customs

Enforcement (ICE) Office of Detention and Removal Operations (DRO), by its attorney, Patrick J.

Fitzgerald, United States Attorney for the Northern District of Illinois, pursuant to Rules 26 and 33

of the Federal Rules of Civil Procedure, hereby submits the following responses to plaintiff's First

Request for Production of Documents:

## DEFINITIONS AND INSTRUCTIONS

A. Each request for production of documents seeks information available to the defendants, their attorneys or agents, and all persons acting in their behalf. Accordingly, as used herein, the terms "defendants," "you," and "your" refer without limitation to the defendants, their attorneys and agents, and all persons acting in their behalf. Each of the interrogatories shall be deemed to be continuing in the manner provided by law.

B. As used herein, "person" means an individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity. When the term "identify" or "identification" is used in conjunction with the term "person," or if the answer to any interrogatory herein refers to a person (as defined herein), you are to state each such person's: (1) full legal name, (2) present or last known address and telephone number (business or residential),

---

[1] **Supplemental information provided in bold typeface.**

1

(3) occupation, job title, business affiliation and/or nature of the business, and (4) age (whether actual or estimated).

C. As used herein, "document" means any writing or other tangible thing known to you whether or not it is in your custody, possession, or control. When the term "identify" or "identification" is used herein in conjunction with the term "document," or if the answer to any interrogatory herein refers to a document (as defined herein), you are to state, with respect to each such document: (1) the title, date, number or other identifying information appearing on the face of the document, (2) the date that the document was prepared, (3) the identity of the person who has custody or control over the document, (4) the name(s) of all authors, recipients, and other persons who have seen the document, and (5) the nature and substance of the document, all with sufficient particularity to enable it to be identified in a request to produce; or in lieu thereof, you may produce the document, provided that each document is appropriately marked to identify the interrogatory to the document is responsive. If no responsive document exists, please so state.

D. As used herein, "communication" includes, without limitation, communications by whatever means transmitted, (*i.e.* whether oral, written, electronic, or other methods if used), as well as any note, memorandum, or other record thereof. When the term "identify" or "identification" is used in conjunction with the term "communication," you are to state, with respect to each such communication:
(1) the identity of the person(s) making it or contributing in any fashion to its creation;
(2) the identity of the recipient and of any person(s) before whom it was made or who witnessed it or who have knowledge of it;
(3) an identification of all documents reflecting, referring, or relating to it;
(4) the nature, substance, and contents of the communication; and
(5) the date of the communication.

E. If any document of identification of any document or oral communication is withheld under a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, provide sufficient information (including, but not limited to, the information specified in paragraph C above) to determine the identity of the document or oral communication and state the basis of any asserted claim of privilege.

F. As used herein, "date" shall mean the exact day, month, and year, if ascertainable, or, if not, the best approximation (including relationship to other events).

G. If you object to part of an interrogatory and refuse to answer that part, state your objection and answer the remaining portion of that interrogatory. If you object to the scope or time period, state your objection and answer the interrogatory for the scope or time period that you believe is appropriate.

## I. REQUEST FOR PRODUCTION OF DOCUMENTS, ETC.

1. Any and all documents, in unredacted and authenticated form, related to or contained in any federal review and/or audit of the McHenry County Jail from 2002 to the present, including but not limited to the October, 2002, INS Annual Review of the McHenry County Jail which resulted in a final rating of deficient; the September, 2003 Review; the July, 2004 Review, the last ICE review prior to the March 29, 2005 Special Assessment, the March Special Assessment; the July, 2005 Review; the November, 2005 Review and all reviews thereafter.

**Response:** The United States objects to request for production 1 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 1 as it is overly broad in time and scope to the extent that it seeks "any federal review and/or audit of the McHenry County Jail" and to the extent that it seeks such reviews and/or audits which occurred after the period of detention of plaintiff's decedent. The United States further objects to request for production 1 to the extent that it seeks "unredacted" documents which calls for the release of information protected by the Privacy Act and federal regulations, or which may be subject to the deliberative process privilege. The United States further objects to request for production 1 to the extent that it seeks documents in an "authenticated form" which is not a permissible request under Federal Rule of Civil Procedures 26 and 34. Subject to, and without waiving its objections, the United States produces herewith McHenry County Jail Annual Detention Review documents as maintained in the files of ICE Chicago Detention and Removal Operations Office for the years 2002, 2003, 2004, and the March 2005 Significant Incident After Action Review.

**Supplement - these materials were produced February 11, 2010, bates numbers 001626-001944. In addition, the United States produced on February 11, 2010, review materials dated after the March 2005 After Action Review, bates numbers 001945-002150.**

2. Any and all documents, in unredacted and authenticated form, containing any correspondence or communication with McHenry County related to any federal review and/or audit of the McHenry County Jail from 2002 to the present, including but not limited to the October, 2002, INS Annual Review of the McHenry County Jail which resulted in a final rating of deficient; the September, 2003 Review; the July, 2004 Review, the last ICE review prior to the March 29, 2005 Special Assessment, the March Special Assessment; the July, 2005 Review; the November, 2005 Review and all reviews thereafter.

**Response:** The United States objects to request for production 2 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 2 as it is overly broad in time and scope to the extent that it seeks "correspondence or communication with McHenry County related to any federal review and/or audit of the McHenry County Jail" and to the extent that it seeks such correspondence or communication which occurred after the period of detention of plaintiff's decedent. The United States further objects to request for production 2 to the extent that it seeks "unredacted" documents which calls for the release of information protected by the Privacy Act and federal regulations, or which may be

3

subject to the deliberative process privilege. The United States further objects to request for production 2 to the extent that it seeks documents in an "authenticated form" which is not a permissible request under Federal Rule of Civil Procedures 26 and 34. Subject to, and without waiving its objections, the United States produces herewith McHenry County Jail Annual Detention Review documents as maintained in the files of ICE Chicago Detention and Removal Operations Office for the years 2002, 2003, 2004, and the March 2005 Significant Incident After Action Review.

**Supplement - these materials were produced February 11, 2010, bates numbers 001626-001944. In addition, the United States produced on February 11, 2010, review materials dated after the March 2005 After Action Review, bates numbers 001945-002150.**

3. Any and all unredacted and authenticated documents contained in or related to the Office of Inspector General investigation (OIG Report) into the death of Ms. Hassiba Belbachir at the McHenry County Jail.

**Response:** The United States objects to request for production 3 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 3 to the extent that it seeks "unredacted" documents which calls for the release of information protected by the Privacy Act and federal regulations, or which may be subject to the deliberative process privilege. The United States further objects to request for production 3 to the extent that it seeks documents in an "authenticated form" which is not a permissible request under Federal Rule of Civil Procedures 26 and 34. Subject to, and without waiving its objections, the United States will produce a copy of the OIG report as maintained by the DHS Chicago Office of Inspector General subject to entry of an acceptable protective order.

4. Any and all document generated by any federal employee as a result of any observation, contact or communication regarding Hassiba Belbachir, including but not limited to any document, memoranda or note generated at O'Hare International Airport, Chicago Field Office and/or the Broadview Service Staging Area.

**Response:** The United States objects to request for production 4 as overly broad to the extent that it seeks production of documents generated by "any federal employee" and concerning any contact or communication regarding Hassiba Belbachir." Subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. Investigation continues for further responsive documents.

**Supplement - produced herewith subject to protective order are the following materials:**
**Additional SEN Notification Materials from DHIS 2550-51, 2554-55**
**Emails from DHIS 2574-2604 (the large redaction at 2588 has been made based upon the deliberative process privilege)**
**Miscellaneous Documents 2606-2610, 2613-2614**
**Medical Record file from DHIS 2661-2693, 2713-2720**

4

Treatment Authorizations from DHIS 2721-2731
EARM (formerly DACS, aka DAX) Screen Prints 2888-2897

On February 11, 2010, the United States produced the following materials:
001339-001340 - Additional Information related to the ICE Detention File which was produced previously at 000001-000052
001359, 001361 - Additional personal documents found in HB's possession which was produced previously at 000001-000052
001341 - Evidence Personal Property Inventory Form
001432-001433 - Memo of Disposition of Deceased Alien Property (CIEA Wennberg) Produced subject to protective order (with Privacy Act Redactions)
001435-001448 - McHenry County Sheriff's Police Incident Report, Supplement Reports and Crime Scene Log Produced subject to protective order (with Privacy Act redactions)
001449-001469 - USPHS Treatment Authorization Request, med records, and incident reports from McHenry
001488 - Assistant Secretary Notes on suicide of HB (Produced subject to protective order)
001489-001490 - ICE Significant Incident Report (Produced subject to protective order)
001491-001506 - Deputy Field Office Director's Notes
002151-002053, 002154-002155, 002156-002158 - Emails (Produced subject to protective order (with Privacy Act redactions)
002161-002163, 002164-002165. 002174-002177, 002178 - Emails
002179, 002180/002184, 002185-002196 - Emails (Produced subject to protective order entered February 3, 2010)
002197-002199, 002200-002201 - Emails

5. Any and all documents concerning any communication received and/or generated by any federal employee regarding the suicide prevention policies and/or deficiencies at the McHenry County Jail, dated from 2002 to the present.

**Response:** The United States objects to request for production 5 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 5 as it is overly broad in time and scope to the extent that it seeks documents generated after the period of detention of plaintiff's decedent. The United States objects to request for production 5 as it is vague and ambiguous as phrased to the extent it seeks information generated by "any federal employee." Subject to, and without waiving its objections, the United States produces herewith McHenry County Jail Annual Detention Review documents as maintained in the files of ICE Chicago Detention and Removal Operations Office for the years 2002, 2003, 2004, and the March 2005 Significant Incident After Action Review.

**Supplement - these materials were produced February 11, 2010, bates numbers 001626-001944. In addition, the United States produced on February 11, 2010, review materials dated after the March 2005 After Action Review, bates numbers 001945-002150.**

5

6. Any and all documents regarding the procedures for taking individuals into immigration custody at O'Hare, transferring and transporting detainees from O'Hare to other facilities including Stone Park Police Department, Broadview Service Staging Area and the McHenry County Jail, dated from 2002 to the present.

**Response:** The United States objects to request for production 6 as it is overly broad in time to the extent that it seeks documents regarding procedures after the period of detention of plaintiff's decedent. Generally, the procedures followed by CBP O'Hare when detaining an alien immigrant are documented in the Alien File. The procedures followed by BSSA when transferring and/or transporting an alien immigrant, to include classification are documented in the Detention Folder. See response to request for production 4. Investigation continues.

**Supplement - subject to and without waiving its objection to Request for Production 6, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and Deportation Officer's Field Manual, bates numbered 002836-002869.**

**Supplement - subject to and without waiving its objection to Request for Production 6, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in place in March 2005 bates numbered 002870-002887.**

**Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to subject of Request for Production 6.**

**Produced herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the IO95 Inspection Results for Ms. Belbachir bates numbered 002749.**

7. Any and all documents regarding the negotiations, agreements and communications regarding the acceptance or transfer of immigration detainees to the McHenry County Jail as well as refusal to accept immigration detainees subsequent to Ms. Belbachir's death, dated from 2002 to the present.

**Response:** The United States objects to request for production 7 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 7 as it is overly broad in time and scope to the extent that it seeks documents generated after the period of detention of plaintiff's decedent.

8. All documents relating to any claim or allegation contained in the complaint, and all documents relating in any way to any defendant's asserted defense to any of these claims.

**Response:** The United States objects to request for production 8 to the extent that it is overly broad in scope and it seeks information protected by the attorney-client privilege, attorney work product doctrine, and deliberative process privilege. Subject to, and without waiving its objections, the United States produces herewith the documents identified in these responses, and identifies the documents previously disclosed in the United States Rule 26 Disclosures, and previously produced by the parties or obtained by subpoena in 06C1392 as responsive to this request. Investigation continues.

9. Any and all statements, sworn or unsworn, by any federal employee or of any other person which may have a bearing on the facts in controversy in this action, and/or may be used at trial.

**Response:** The United States objects to request for production 9 as overly broad in scope, unduly burdensome, and seeks information protected by the attorney-client privilege, attorney work product, and deliberative process privilege. The United States further objects to the extent that it seeks production of statements by "any federal employee." Subject to, and without waiving its objections, the United States produces herewith the documents identified in these responses, and identifies the documents previously disclosed in the United States Rule 26 Disclosures, and previously produced by the parties or obtained by subpoena in 06C1392 as responsive to this request. Investigation continues.

10. True copies of any and all documents and tangible evidence defendant intends to use at trial in this case.

**Response:** At this time, it is unknown which documents and tangible evidence the United States intends to use at trial in this case. Investigation continues.

11. All liability insurance policies applicable to the defendant's exposure in this litigation.

**Response:** The United States is self ensured. There are no documents responsive to this request.

12. All contracts in effect March of 2005 between McHenry County and ICE/Homeland Security relating to McHenry County's detention of ICE detainees and for five years prior to that date.

**Response:** The United States objects to request for production 12 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request for production 12 as it is overly broad in time and scope. Subject to, and without waiving its objections, the United States produces herewith a copy of the contract in effect March of 2005 between McHenry County and ICE/Homeland Security relating to McHenry County's detention of ICE detainees.

13. All documents reflecting the United States and its policies, practices and/or customs

7

applicable to the years 2002 through 2007 with respect to:

    a) properly training, supervising, disciplining, transferring, monitoring, counseling and otherwise controlling federal immigration officials;

    b) appropriately screening and recognizing suicidal tendencies in detainees, and taking adequate preventative measures upon discovery of suicidal tendencies of detainees, including to providing timely and adequate care, treatment and/or supervision for potentially suicidal detainees;

    c) appropriately and timely identifying detainees' needs for physical and mental health medical attention, and adequately and timely communicating critical information regarding physical and/or mental health to appropriate health care providers , including the suicidal behavior of detainees;

    d) properly supervising, observing, treating and/or caring for detainees placed in the immigration detention;

    e) notifying detained foreign nationals of their rights to contact their consulates, and notifying consulates of foreign nationals that their nationals are detained;

    f) providing methods of communication between detainees whose first language is not English and immigration personnel and contractual correctional facilities.

**Response:** The United States objects to request for production 13 as it is not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff has not asserted a claim for which the United States' liability may be established through review of its policies, practices, and/or customs. While municipalities may be held liable under 42 U.S.C. § 1983 for maintaining an unconstitutional custom, policy, or practice, *see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), no similar doctrine applies to the Federal Government. *See Burgert v. United States*, 2007 WL 2326858, *3 (D. Mont. Aug 8, 2007); *Hightower v. United States*, 205 F. Supp. 2d 146, 155 (S.D.N.Y. 2002). The United States further objects to request for production 13 as it is overly broad in scope to the extent that it seeks the "United States" policies, practice and/or customs.

**Supplement - subject to and without waiving its objection to Request for Production 13, the United States produced via email on April 13, 2010, Subject to the Protective Order entered on February 3, 2010, the Chicago Field Office Field Training Officer's (FTO) Training Guide bates numbered 002800-002833. Investigation continues to identify additional training materials and instructors from 2002-2006.**

**Supplement - subject to and without waiving its objection to Request for Production 13, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and Deportation Officer's Field Manual, bates numbered 002836-002869.**

**Supplement - subject to and without waiving its objection to Request for Production 13, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in**

place in March 2005 bates numbered 002870-002887.

**Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to subject of Request for Production 13.**

14. All reports of inspections and evaluations of McHenry County detention facilities of which federal officials were aware, not otherwise produced, including but not limited to those performed by the Illinois Department of Corrections, the United Nations High Commission on Refugees, ABA Immigration Section, and McHenry County, dating from 1995 up to and including the present.

**Response:** The United States objects to request for production 14 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to the extent that this request seeks production of materials of which "federal official were aware."

15. All documents reflecting investigation, evaluation, analysis, inspection, discipline following the death of Hassiba Belbachir.

**Response:** The United States objects to request for production 15 as it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving its objections, the United States will produce a copy of the OIG report as maintained by the DHS Chicago Office of Inspector General subject to entry of an acceptable protective order. Further, subject to, and without waiving its objections, the United States produces the report of the March 2005 Significant Incident After Action Review of McHenry County Jail.

**Supplement - produced herewith subject to protective order are the following materials:**
**Additional SEN Notification Materials from DHIS 2550-51, 2554-55**
**Emails from DHIS 2574-2604 (the large redaction at 2588 has been made based upon the deliberative process privilege)**
**Miscellaneous Documents 2606-2610, 2613-2614**
**Medical Record file from DHIS 2661-2693, 2713-2720**
**Treatment Authorizations from DHIS 2721-2731**
**EARM (formerly DACS, aka DAX) Screen Prints 2888-2897**

**On February 11, 2010, the United States produced the following materials:**
**001339-001340 - Additional Information related to the ICE Detention File which was produced previously at 000001-000052**
**001359, 001361 - Additional personal documents found in HB's possession which was produced previously at 000001-000052**
**001341 - Evidence Personal Property Inventory Form**
**001432-001433 - Memo of Disposition of Deceased Alien Property (CIEA Wennberg) Produced subject to protective order (with Privacy Act Redactions)**

9

**001435-001448 - McHenry County Sheriff's Police Incident Report, Supplement Reports and Crime Scene Log Produced subject to protective order (with Privacy Act redactions)**
**001449-001469 - USPHS Treatment Authorization Request, med records, and incident reports from McHenry**
**001488 - Assistant Secretary Notes on suicide of HB (Produced subject to protective order)**
**001489-001490 - ICE Significant Incident Report (Produced subject to protective order)**
**001491-001506 - Deputy Field Office Director's Notes**
**002151-002053, 002154-002155, 002156-002158 - Emails (Produced subject to protective order (with Privacy Act redactions)**
**002161-002163, 002164-002165. 002174-002177, 002178 - Emails**
**002179, 002180/002184, 002185-002196 - Emails (Produced subject to protective order entered February 3, 2010)**
**002197-002199, 002200-002201 - Emails**

16. Minutes of any meetings of federal officials during which Hassiba Belbachir, her death or this litigation or the potential therefor, is mentioned.

**Response:** The United States objects to request for production 16 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 16 to the extent that it is directed at attorney-client communications, or documents protected by the work product privilege or the deliberative process privilege. Subject to, and without waiving its objections, the United States has so far not located any responsive documents. Investigation continues.

17. All documents relating to the detention and death of Hassiba Belbachir, including, but not limited to, correspondence or communication between federal officials and
  a) any representative of McHenry County;
  b) any representative of Centegra Health;
  c) any representative of the Embassy of The People's Democratic Republic of Algeria;
  d) any member of the Belbachir family and any representative thereof;
  e) all other defendants; and
  f) all other persons.

**Response:** The United States objects to request for production 17 as overly broad in scope to the extent that as seeks "correspondence or communication between federal officials." Subject to, and without waiving its objections, the United States will produce a copy of the OIG report as maintained by the DHS Chicago Office of Inspector General subject to entry of an acceptable protective order. Further, subject to, and without waiving its objections, the United States produces the report of the March 2005 Significant Incident After Action Review of McHenry County Jail. Further, subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. Investigation continues for further responsive documents.

10

Supplement - produced herewith subject to protective order are the following materials:
Additional SEN Notification Materials from DHIS 2550-51, 2554-55
Emails from DHIS 2574-2604 (the large redaction at 2588 has been made based upon the deliberative process privilege)
Miscellaneous Documents 2606-2610, 2613-2614
Medical Record file from DHIS 2661-2693, 2713-2720
Treatment Authorizations from DHIS 2721-2731
EARM (formerly DACS, aka DAX) Screen Prints 2888-2897

On February 11, 2010, the United States produced the following materials:
001339-001340 - Additional Information related to the ICE Detention File which was produced previously at 000001-000052
001359, 001361 - Additional personal documents found in HB's possession which was produced previously at 000001-000052
001341 - Evidence Personal Property Inventory Form
001432-001433 - Memo of Disposition of Deceased Alien Property (CIEA Wennberg) Produced subject to protective order (with Privacy Act Redactions)
001435-001448 - McHenry County Sheriff's Police Incident Report, Supplement Reports and Crime Scene Log Produced subject to protective order (with Privacy Act redactions)
001449-001469 - USPHS Treatment Authorization Request, med records, and incident reports from McHenry
001488 - Assistant Secretary Notes on suicide of HB (Produced subject to protective order)
001489-001490 - ICE Significant Incident Report (Produced subject to protective order)
001491-001506 - Deputy Field Office Director's Notes
002151-002053, 002154-002155, 002156-002158 - Emails (Produced subject to protective order (with Privacy Act redactions)
002161-002163, 002164-002165. 002174-002177, 002178 - Emails
002179, 002180/002184, 002185-002196 - Emails (Produced subject to protective order entered February 3, 2010)
002197-002199, 002200-002201 - Emails

18. All records documenting Hassiba Belbachir's custody, including but not limited to notes, memoranda, inventories of personal property taken from her upon arrival, asylum applications, immigration court documentation, booking records, intake records, questionnaires, notification of any third parties, including consulates; medical, dental, psychiatric, prescription drug, psychological and social work records; commissary records; telephone records; visiting records; mail records; dietary records; disciplinary records; officer reports; movement passes; logs reflecting any activity pertaining to her; records from any other detention facility.

**Response:** The United States objects to request for production 18 as it is overly broad in time and scope. Subject to, and without waiving its objections, the United States will produce a copy of the OIG report as maintained by the DHS Chicago Office of Inspector General subject to entry of an acceptable protective order. Further, subject to, and without waiving its objections, the United

States produces the report of the March 2005 Significant Incident After Action Review of McHenry County Jail. Further, subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. Investigation continues for further responsive documents.

**Supplement - produced herewith subject to protective order are the following materials:**
**Additional SEN Notification Materials from DHIS 2550-51, 2554-55**
**Emails from DHIS 2574-2604 (the large redaction at 2588 has been made based upon the deliberative process privilege)**
**Miscellaneous Documents 2606-2610, 2613-2614**
**Medical Record file from DHIS 2661-2693, 2713-2720**
**Treatment Authorizations from DHIS 2721-2731**
**EARM (formerly DACS, aka DAX) Screen Prints 2888-2897**

**On February 11, 2010, the United States produced the following materials:**
**001339-001340 - Additional Information related to the ICE Detention File which was produced previously at 000001-000052**
**001359, 001361 - Additional personal documents found in HB's possession which was produced previously at 000001-000052**
**001341 - Evidence Personal Property Inventory Form**
**001432-001433 - Memo of Disposition of Deceased Alien Property (CIEA Wennberg) Produced subject to protective order (with Privacy Act Redactions)**
**001435-001448 - McHenry County Sheriff's Police Incident Report, Supplement Reports and Crime Scene Log Produced subject to protective order (with Privacy Act redactions)**
**001449-001469 - USPHS Treatment Authorization Request, med records, and incident reports from McHenry**
**001488 - Assistant Secretary Notes on suicide of HB (Produced subject to protective order)**
**001489-001490 - ICE Significant Incident Report (Produced subject to protective order)**
**001491-001506 - Deputy Field Office Director's Notes**
**002151-002053, 002154-002155, 002156-002158 - Emails (Produced subject to protective order (with Privacy Act redactions)**
**002161-002163, 002164-002165. 002174-002177, 002178 - Emails**
**002179, 002180/002184, 002185-002196 - Emails (Produced subject to protective order entered February 3, 2010)**
**002197-002199, 002200-002201 - Emails**

19. All documents documenting use of a telephone translation line during any and all encounters between Hassiba Belbachir and any person, including but not limited to audiotapes of such encounters, records reflecting names and addresses of participating translators, billing records.

**Response:** The United States objects to request for production 19 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to this request as it is not reasonably calculated to lead to the discovery of admissible evidence because

through investigation completed thus far, it has been reported that Ms. Hassiba Belbachir communicated in English with employees assigned to CBP and ICE who had verbal contact with her. Subject to, and without waiving its objections, the United States responds that no documents documenting use of a telephone translation line during any and all encounters between Hassiba Belbachir have been identified. Investigation continues.

20. All documents documenting Hassiba Belbachir's use of the telephone during her time in custody, including but not limited to names and telephone numbers of all persons called, dates called, duration of each call, audiotapes of calls.

**Response:** No documents have been identified. Investigation continues.

21. All audio and videotapes reflecting or pertaining to Hassiba Belbachir and the units in which she was detained during the time she was detained, including at O'Hare or Broadview.

**Response:** No documents or materials responsive to this requests are available for production. Audio and videotapes reflecting the units at CBP are not created. Audio and videotapes reflecting the units and other areas at BSSA are created but are no longer available as they pertain to the time period 2005.

**Supplement - On February 2, 2010, counsel for the United States requested and obtained the identity of the custodian of video recording equipment and recordings at BSSA in order to provide the name of the witness who could testify in support of the above response. Counsel attempted to reach the witness, Russell Milton on February 11 and 17, 2010. When Mr. Milton was interviewed on March 9, 2010, he informed counsel that a copy of the video recording made at BSSA while Ms. Belbachir was at BSSA was preserved on disk at the request of a supervisor. Counsel contacted the likely requesting supervisor, who in March 2005 was William Wennberg. Mr. Wennberg has no specific recall of asking for the video to be placed on a disk, but advised that if he had, it would have been at the request of a supervisor or OIG and he would expect that he would have provided the disk to the requester. On March 10, 2010, counsel requested personnel currently located at BSSA, IEA Danny Rodriguez and SDDO Robert Podgorni to conduct a search for the disk at BSSA. The search did not produce a disk containing video of Ms. Belbachir. On March 12, 2010, counsel consulted Deborah Achim, who was the Field Office Director ("FOD") in March 2005, and Ms. Achim advised that she had no recall of asking that a video be copied to disk. On the same day counsel attempted to consult with Glenn Triveline, Acting Deputy FOD in March 2005 about his recollection. Mr. Triveline was away from the office until March 29, 2010.**

**On April 22, 2010, counsel contacted Glenn Triveline who confirmed that he had no recall of requesting a disk of the video. Mr. Triviline has been involved with various matters related to Ms. Belbachir's case, such as the after-action review, the OIG investigation, responses to subpoena and FOIA requests. Mr. Triveline conducted a review of materials related to the Belbachir case that he has in his possession and confirmed on April 23, 2010 that there is no**

disk containing video of Ms. Belbachir while at BSSA. On April 23, 2010, counsel confirmed with Dan Young, Office of Inspector General that he did not request that video of Ms. Belbachir while she was at BSSA be placed on a disk, nor was he provided with such a disk. On April 23, 2010, counsel confirmed with George Rodriguez (Supervisor who succeeded Chief Wennberg) that he never had possession of a disk containing images of Ms. Belbachir, and did not discover such an item when he occupied the former office space of Mr. Wennberg.

22. All dispatch documents pertaining to Hassiba Belbachir.

**Response:** None "dispatch" documents exist for CBP and BSSA.

23. All documents reflecting United States policies, procedures, practices and customs concerning the following:
a) identifying appropriate contract facilities to properly and safely detain immigrant detainees;
b) enforcing and ensuring compliance with Detention Standards by all contract facilities, including the McHenry County Jail;
c) assessing and initial screening of immigration detainees; and
d) communicating necessary information and documentation for the care of immigration detainees upon their transfer to contract facilities.

**Response:** The United States objects to request for production 23 as it is not reasonably calculated to lead to the discovery of admissible evidence. In further support of this objection see the United States' response to request number 23. Subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the "Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. Further, subject to, and without waiving its objections, the United States will produce a copy of the Detention Operation Manual 2000. Further, subject to, and without waiving its objections, the United States produces herewith McHenry County Jail Annual Detention Review documents as maintained in the files of ICE Chicago Detention and Removal Operations Office for the years 2002, 2003, 2004, and the March 2005 Significant Incident After Action Review. Investigation continues for further responsive documents.

**Supplement - subject to and without waiving its objection to Request for Production 23, the United States produced via email on April 13, 2010, Subject to the Protective Order entered on February 3, 2010, the Chicago Field Office Field Training Officer's (FTO) Training Guide bates numbered 002800-002833. Investigation continues to identify additional training materials and instructors from 2002-2006.**

**Supplement - subject to and without waiving its objection to Request for Production 23, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and**

14

**Deportation Officer's Field Manual, bates numbered 002836-002869.**

**Supplement - subject to and without waiving its objection to Request for Production 23, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in place in March 2005 bates numbered 002870-002887.**

**Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to subject of Request for Production 23.**

24. All documents reflecting any screening, intake or booking training conducted of O'Hare or Broadview personnel.

**Response:** No documents responsive to this request have been located at this time. Investigation continues.

**Supplement - subject to and without waiving its objection to Request for Production 24, the United States produced via email on April 13, 2010, Subject to the Protective Order entered on February 3, 2010, the Chicago Field Office Field Training Officer's (FTO) Training Guide bates numbered 002800-002833. Investigation continues to identify additional training materials and instructors from 2002-2006.**

25. All documents reflecting any specific training conducted for personnel assigned to the I.C.E. detainees.

**Response:** No documents responsive to this request have been located at this time. Investigation continues.

**Supplement - subject to and without waiving its objection to Request for Production 25, the United States produced via email on April 13, 2010, Subject to the Protective Order entered on February 3, 2010, the Chicago Field Office Field Training Officer's (FTO) Training Guide bates numbered 002800-002833. Investigation continues to identify additional training materials and instructors from 2002-2006.**

26. All documents reflecting notification policies of all consulates, from March 9, 2004 up to and including the present, that their nationals were being detained by McHenry County, including but not limited to notification of the Algerian Consulate that McHenry County detained its national, Hassiba Belbachir.

**Response:** The United States objects to request for production 26 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 26 as it is overly broad in scope. Plaintiff's claim alleging failure to provides consular notification to

consulates, or to Ms. Hassiba Belbachir was dismissed.

**Supplement - the Department of Homeland Security Federal Regulation in effect on March 9, 2005, 8 CFR 236.1 is attached.**

27. All documents reflecting notification policies of all ICE detainees, from March 9, 2004 up to and including the present, of their right to contact their consulates, including but not limited to, notification of Hassiba Belbachir of her right to contact the Algerian Consulate.

**Response:** The United States objects to request for production 27 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 27 as it is overly broad in scope. Plaintiff's claim alleging failure to provides consular notification to consulates, or to Ms. Hassiba Belbachir was dismissed.

**Supplement - the Department of Homeland Security Federal Regulation in effect on March 9, 2005, 8 CFR 236.1 is attached.**

28. All documents reflecting checks of Ms. Belbachir at any time and any log reflecting any such check.

**Response:** No documents responsive to this request have been located at this time. Investigation continues.

**Supplement - No documents or logs reflecting checks of Ms. Belbachir have been located.**

29. All documents reflecting Ms. Belbachir's conduct while detained, other than at the McHenry County Jail.

**Response:** The United States will produce a copy the "Alien File" and the "Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. No other documents responsive to this request have been located at this time. Investigation continues.

**Supplement - No further documents or logs reflecting Ms. Belbachir's conduct while detained have been located.**

30. Any audiotapes of communications, including emergency and non-emergency calls, made regarding Hassiba Belbachir, other than while she as at McHenry County Jail.

**Response:** No documents responsive to this request have been identified at this time. Investigation continues.

31. All photographs or other reproductions of the visual image of Hassiba Belbachir, alive or dead, and all photographs concerning or pertaining to the death of Hassiba Belbachir, including

16

but not limited to, intake photographs.

**Response:** The United States will produce a copy the "Alien File" and the "Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order.

32. All documents regarding Hassiba Belbachir generated, collected or maintained by the United States and any representative thereof.

**Response:** The United States objects to request for production 32 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to request 32 as it is overly broad in scope. The United States further objects to request 32 as it is vague and ambiguous as phrased to the extent it seeks information "generated, collected or maintained by the United States of any representative thereof." Subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the "Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. No documents responsive to this request have been located at this time. Investigation continues.

**Supplement - produced herewith subject to protective order are the following materials:**
**Additional SEN Notification Materials from DHIS 2550-51, 2554-55**
**Emails from DHIS 2574-2604 (the large redaction at 2588 has been made based upon the deliberative process privilege)**
**Miscellaneous Documents 2606-2610, 2613-2614**
**Medical Record file from DHIS 2661-2693, 2713-2720**
**Treatment Authorizations from DHIS 2721-2731**
**EARM (formerly DACS, aka DAX) Screen Prints 2888-2897**

**On February 11, 2010, the United States produced the following materials:**
**001339-001340 - Additional Information related to the ICE Detention File which was produced previously at 000001-000052**
**001359, 001361 - Additional personal documents found in HB's possession which was produced previously at 000001-000052**
**001341 - Evidence Personal Property Inventory Form**
**001432-001433 - Memo of Disposition of Deceased Alien Property (CIEA Wennberg) Produced subject to protective order (with Privacy Act Redactions)**
**001435-001448 - McHenry County Sheriff's Police Incident Report, Supplement Reports and Crime Scene Log Produced subject to protective order (with Privacy Act redactions)**
**001449-001469 - USPHS Treatment Authorization Request, med records, and incident reports from McHenry**
**001488 - Assistant Secretary Notes on suicide of HB (Produced subject to protective order)**
**001489-001490 - ICE Significant Incident Report (Produced subject to protective order)**
**001491-001506 - Deputy Field Office Director's Notes**
**002151-002053, 002154-002155, 002156-002158 - Emails (Produced subject to protective order (with Privacy Act redactions)**

17

**002161-002163, 002164-002165. 002174-002177, 002178 – Emails**
**002179, 002180/002184, 002185-002196 – Emails (Produced subject to protective order entered**
**February 3, 2010)**
**002197-002199, 002200-002201 – Emails**

33. Minutes of every meeting during which the welfare of ICE detainees at the McHenry County Jail is mentioned for the last five years.

**Response:** The United States objects to request for production 33 as it is not reasonably calculated to lead to the discovery of admissible evidence. In further support of this objection see the United States' response to request number 23. The United States further objects to request 33 as it is overly broad in scope and time.

34. All correspondence between the United States and McHenry County relating to the expansion of McHenry County facilities, the increase in the number of ICE detainees to be detained at McHenry County Jail and any financial compensation to be paid therefore, including but not limited to any grants, construction cost payments, per diem payments for each detainee.

**Response:** The United States objects to request for production 34 as it is not reasonably calculated to lead to the discovery of admissible evidence.

35. All documents reflecting compliance with Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794) and Title II of the Americans with Disabilities Act (42 U.S.C. §§12131-12134) with respect to Hassiba Belbachir, as alleged in Plaintiff's Complaint.

**Response:** The United States objects to request for production 35 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 35 as it is overly broad in scope. Plaintiff's complaint alleges no such claim. Previous allegations of a failure to comply Section 504 of the 1973 Rehabilitation Act (29 U.S.C. § 794) was dismissed in a prior suit.

36. All documents reflecting any complaints or grievances filed against the McHenry County Jail by any I.C.E. detainee for the five years preceding Ms. Belbachir's death.

**Response:** The United States objects to request for production 36 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 36 as it is overly broad in scope and time. Written communications which might have contained complaints or grievances received from ICE detainees are not segregated as such, nor are the segregated and maintained by facility, but rather by detainee file. It is estimated that approximately 5000 such written communications are received from detainees in this region per year.

37. All manuals, guidelines, directives or other materials which relate to the booking, intake, activities, guidelines, functioning, management or control of I.C.E. detainees, including those

18

transported to McHenry County Jail applicable to the years 2002 through 2007.

**Response:** The United States objects to request for production 37 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 37 as it is overly broad in scope and time. Subject to, and without waiving its objections, the United States will produce a copy the "Alien File" and the "Detention Folder" concerning Ms. Hassiba Belbachir subject to entry of an acceptable protective order. Further, subject to, and without waiving its objections, the United States will produce a copy of the Detention Operation Manual 2000. Investigation continues for further responsive documents.

**Supplement - subject to and without waiving its objection to Request for Production 37, the United States produced via email on April 13, 2010, Subject to the Protective Order entered on February 3, 2010, the Chicago Field Office Field Training Officer's (FTO) Training Guide bates numbered 002800-002833. Investigation continues to identify additional training materials and instructors from 2002-2006.**

**Supplement - subject to and without waiving its objection to Request for Production 37, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, a copy of DRO Operating Instruction regarding physical and mental examinations of arriving aliens, bates numbered 002834-002835, and a copy of relevant portions of the Detention and Deportation Officer's Field Manual, bates numbered 002836-002869.**

**Supplement - subject to and without waiving its objection to Request for Production 37, the United States produces herewith Subject to the Protective Order entered on February 3, 2010, is a copy of the Standard Operating Procedures ("SOP") concerning detentions at O'Hare in place in March 2005 bates numbered 002870-002887.**

**Supplement - The United States designates Glenn Triveline (DRO) and James Squires (CBP) to serve as Rule 30(b)(6) witnesses to provide any further information responsive to subject of Request for Production 37.**

38. The complete personnel file for each United States employee who came in contact with Hassiba Belbachir or was a supervisor responsible for any aspect of Hassiba Belbachir's case, including, but not limited to, all documents relating to any inquiry into the conduct of this employee for any matter, and all documents relating to each employee's training and performance during his employment with the United States, and all documents relating to every disciplinary actions taken against each.

**Response:** The United States objects to request for production 38 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States objects to request 38 as it is overly broad in scope and time.

39. For each expert witness, produce his/her curriculum vitae, notes and reports, all materials

reviewed and/or relied upon or which will be reviewed and/or relied upon, a complete list of publications and presentations, a complete list of all lawsuits in which s/he consulted and/or testified, and his/her report(s) in this case, and state the documents reviewed and the hourly rate.

**Response:** The United States reserved the right to provide documentation responsive to this request at a later date and pursuant to the Court's Cade Management Orders. Investigation continues.

40. All documents referred to in or relating to your answers to all discovery propounded by plaintiff.

**Response:** See the United States responses to the requests contained herein, and to plaintiff's First Set of interrogatories. Investigation continues.

41. All documents received by United States in response to subpoenas issued in this litigation.

**Response:** The United States has no documents responsive to this request.

**Supplement - attached hereto is the United States' subpoena to Stone Park Police Department along with responsive materials. 002898-002944.**

42. All statements of parties and witnesses. If you know of statements which are not in your possession, please state the name, address and telephone number of the person(s) who is in possession.

**Response:** The United States objects to request for production 42 to the extent that it is directed at attorney-client communications, or documents protected by the work product privilege, deliberative process privilege, or law enforcement investigative privilege. The United States further objects to interrogatory 42 as it is overly broad in scope and unduly burdensome. Subject to, and without waiving its objections, the United States is not aware of any responsive documents at this time other than disclosed in these responses, and disclosed by the parties to 06C1392. Investigation continues.

43. For every civil and/or criminal lawsuit against United States for the death of a detainee in custody, produce all judgment orders, transcripts of all depositions, testimony, and other sworn statements of the individual employees for each case.

**Response:** The United States objects to request for production 43 as it is not reasonably calculated to lead to the discovery of admissible evidence. The United States further objects to interrogatory 43 as it is overly broad in scope and time.

44. Job and post descriptions for the positions held by each employee who came in contact

20

with Hassiba Belbachir or was responsible for any aspect of her immigration case.

**Response:** No responsive documents have been located at this time. Investigation continues.

**Supplement -**
**Position descriptions provided by DRO were produced on February 11, 2010, bates numbers**
**002202-002249 Subject to the Protective Order entered on February 3, 2010.**
**Position descriptions for CBP personnel are produced herewith, bates numbers 002732-**
**002748, Subject to the Protective Order entered on February 3, 2010.**

Respectfully submitted,
PATRICK J. FITZGERALD
United States Attorney

By: _Monica V. Mallory_
MONICA V. MALLORY
Assistant United States Attorney
308 West State Street, Room 300
Rockford, Illinois 61101
(815) 987-4444

21

## CERTIFICATE OF SERVICE

I, MONICA V. MALLORY, certify that on April 23, 2010, I caused the foregoing United

States' Response to plaintiff's First Request for Production of Documents, First Supplement, to be

sent Federal Express to:

Jan Susler
Janine Hoft
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60622

and also sent by Federal Express to the following counsel in 06C1392 pursuant to consolidated discovery order.

Arthur J. Reliford
Susan E. Sullivan
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611

George J. Casson, Jr.
Clifford Gary Kosoff
O'Halloran, Kosoff, Helander & Geitner, P.C.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062

MONICA V. MALLORY
Assistant United States Attorney
308 West State Street - Room 300
Rockford, Illinois 61101
815-987-4444

22

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

ESTATE OF HASSIBA BELBACHIR,   )
   )
     Plaintiff,   )
   )    No. 06 C 1392
     vs.   )
   )    Judge Philip G. Reinhard
UNITED STATES,   )
   )    Magistrate Judge P. Michael Mahoney
     Defendant.   )

**PLAINTIFF'S MOTION TO COMPEL UNITED STATES
TO FULLY ANSWER PLAINTIFF'S DISCOVERY AND
<u>PRODUCE DEPONENT DAN YOUNG</u>**

# Exhibit C



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*
*Western Division*

| | | |
|---|---|---|
| *Monica V. Mallory* | *308 West State Street - Room 300* | *PH: (815) 987-4444* |
| *Assistant U.S. Attorney* | *Rockford, Illinois 61101* | *FAX: (815) 987-4236* |

April 26, 2010

Via Email

Janine L. Hoft
Jan Susler
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60622
JSusler@aol.com and Janinehoft@aol.com

     Re:   *Belbachir v. United States,* No. 08 C 50193 (N.D. Ill.)

Dear Janine and Jan:

     I write in response to your letter of April 16, 2010, in an effort to resolve the outstanding discovery issues you raised therein pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2.

     1.    You raise concern about the issue of surveillance video recordings taken at Broadview, my knowledge of such video recordings, and my attempt to obtain a copy of images of Ms. Belbachir taken during the date of March 9, and images of the search of Ms. Belbachir's luggage which occurred after the date of her death.

     I supplied a description of the information known to me and my efforts to locate any video images of either Ms. Belbachir, or the search of her luggage in the United States' supplemental responses to plaintiff's document requests which I sent out on April 23, 2010. I consider my explanation sufficient. I do feel the need to write to clarify that I disagree that I am under an obligation to advise you of the possibility of evidence before I have concluded my own investigation. I must also point out that I do not recall, nor did I intend to advise Ms Susler that I had not spoken to Mr. Wennberg. The supplemental response to request 21 makes clear the Mr. Wennberg was consulted about the report of Russell Milton that he had copied video images to a disk at the request of a supervisor. I have received no similar reports that the footage depicting the search of Ms. Belbachir's luggage was downloaded to disk. However, as supplemental response number 21 makes clear, I have not located any disk containing images from Broadview, irregardless of what images such disk might contain.

     2.    You have requested the entries into the "DAX" computer system, which were migrated to the "EARM" system. I obtained and produced screen prints recovered from the EARM system in my supplemental discovery responses sent on April 23, 2010. They are numbered 2888-

April 26, 2010
Page 2

2897.

3.      You have requested any additional documents that exist regarding "detainee classifications" at McHenry County Jail as mentioned in the Nagel June 8, 2005 memorandum, Nagel Deposition Exhibit 3 (document number 2197). This document was produced merely for completeness because it is referred to in document 1931, and therefore related to the ICE DRO Field Office response to the March 2005 Jail After Action Review located at documents number 1920-1930, all of which were produced on February 11, 2010. I see no possible relevance to further discovery on space limitations and shortages at the jail and how that would impact the ability to house varying classification levels of ICE detainees. Nor would such information be reasonably calculated to lead to the discovery of admissible evidence. Your complaint makes no allegation that Ms. Belbachir was improperly classified as to her security risk, nor do you allege that she was improperly housed with persons of a higher security risk.

4.      As to the deposition schedule. I am attempting to schedule the deposition of Michael Boland, and the continued deposition of Brent Kriehn, as you are aware from the email exchanges over the last few days.

The deposition of Mr. Dan Young was not authorized by the agency (DHS/DRO) when it was requested in the 06CV1392 case pursuant to the Touhy regulations that govern production of a witness for a case in which the United States is not a party. That decision stands until further order of a court and prevents me from producing Agent Young for the purpose of a deposition in 06CV1392. Please see the correspondence you received on or about March 17 and Mar 18, 2009 from Ms. Gallo and Mr. Mackay.

As to 08CV50193, Belbachir v. United States, I am unable to understand what evidence Mr. Young can provide since he was not a witness to any event prior to Ms. Belbachir's death. His role was that of an investigator after the death of Ms. Belbachir. I am unable to identify any evidence that Agent Young could provide in a deposition or trial setting that would be admissible. I would be happy to consider production if you provide me with an explanation why Agent Young's testimony is necessary by indicating what information you hope to obtain, beyond that which is contained in the report already in your possession. The OIG report of investigation was produced with very limited redactions.

To the extent that you seek <u>factual</u> testimony from Agent Young, please indicate what additional <u>facts</u> you think he may have that are not contained in the documents you have received. To the extent that you hope to elicit expert or opinion testimony from Agent Young, please be advised that 5 C.F.R. § 2635.805 generally precludes expert testimony from being given by government employees, and 6 C.F.R. 5.49 specifically precludes such testimony by Agent Young absent compliance with the requirements set out in that section. Accordingly, <u>if</u> he is eventually authorized to testify, it is highly unlikely that Agent Young will be permitted to give his personal or professional opinions on any matters at issue in this case.

April 26, 2010
Page 3

Very truly yours,

PATRICK J. FITZGERALD
United States Attorney

By: *Monica V. Mallory*

MONICA V. MALLORY
Assistant United States Attorney

Copy to: (via email)
Attorney Arthur J. Reliford, Jr.
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
areliford@smbtrials.com

George J. Casson
O'Halloran Kosoff Geitner & Cook, LLC
Attorneys at Law
Edens Corporate Center
650 Dundee Road, Fourth Floor
Northbrook, Illinois 60062
gcasson@okgc.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1392 |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge P. Michael Mahoney |
| Defendant. | ) | |

PLAINTIFF'S MOTION TO COMPEL UNITED STATES
TO FULLY ANSWER PLAINTIFF'S DISCOVERY AND
PRODUCE DEPONENT DAN YOUNG

# Exhibit D

# PEOPLE'S LAW OFFICE

1180 N. Milwaukee
Chicago, Illinois, 60642
(773) 235-0070
Fax (773) 235-6699

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Sarah Gelsonimo
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.

*Of Counsel*
Jeffrey H. Haas

April 21, 2010

AUSA Monica Mallory
United States Attorney's Office
308 W. States St., Suite 300
Rockford, IL 61101

Re:     *Belbachir v. U. S., 08-50193*
        *Via electronic mail*

Dear Ms. Mallory:

Upon review of this file and in particular your October 30, 2009, formal answer to Plaintiff's Request for Production, we must again write pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2 in an effort to resolve outstanding discovery issues.

Initially, we take issue with your objection that Plaintiff's Requests 1, 2, 3, 5, 7, 12, 13, 14, 15, 16, 19, 23, 26, 27, 32, 33, 34, 35, 36, 37, 38 and 43 are "not calculated to lead to the discovery of admissible evidence." From the blanket way in which you invoke this phrase, it may be that you are not clear that the broad scope of discovery provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," and that generally speaking, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identify and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). We therefore ask you to reconsider these objections and accordingly answer these requests.

While we appreciate that you have continued to provide us with additional documents since October, we must insist that you complete your "continuing investigation" and provide us with all responsive documents, particularly given the imminent discovery cut off date of June 1, 2010.

Specifically, we have requested documents regarding policies and procedures of the United States, specifically Immigration and Customs Enforcement/Homeland Security. (See Requests 13, 23 and 27) As you know, despite there not being a *Monell* claim against the United States, Judge Reinhard identified the potential for negligent, willful and wanton acts by any employee of the United States and specifically referenced Plaintiff's allegations concerning the lack of policies and training concerning mental health screening and suicide prevention. (See Dkt. 29, Judge Reinhard's order denying motion to dismiss by the United States) Further, consular notification policies are relevant, particularly provided the testimony of McHenry

Page Two, Letter to Mallory
April 21, 2010; *Belbachir v. U. S.*

County officials that they understood that the United States was to notify consulates.

Further, we have been advised that the various specific agencies we referenced in Request 14 did conduct inspections and audits of McHenry County Jail and provided this information to the United States. These documents are obviously relevant and we would limit our request in the spirit of cooperation to the time period of 2002 to the present. We can further limit this request to the identified agencies and withdraw the additional request regarding any further inspections "of which federal officials were aware." (See Request 14)

With respect to Request 1, you agreed at the initial deposition of Brent Kreihn to produce the complete review files for each review, files which, we anticipate, will contain all documents pertaining to each review, including all memoranda and correspondence concerning plans of action, requests for closure, notifications of closure, etc. If it turns out that the complete documentation is for some reason not included in the review files, we would ask that you produce the complete documentation for each review, regardless of where it may be maintained. Please do so for each review from 2002 through 2006.

In Requests 4, 5 and 32, we generally ask for any document related to Hassiba Belbachir and suicide prevention policy deficiencies at the McHenry County Jail. The United States posed an inappropriate objection that responsive documents were not relevant. Please clarify whether you have produced all responsive documents or whether you will stand on this objection. Particularly with respect to Request 4, Plaintiff's request is not limited to the A File and the Detention folder. If, by your answer, you mean to represent that there are no documents other than those in the two named files, kindly so state. Otherwise, you are under an obligation to disclose all requested documents. And, for Request 5, you respond that you are producing the annual review documents "as maintained in the files of ICE Chicago Detention and Removal Operations Office." As you well know, Plaintiff's request is not limited to documents maintained in the Chicago DRO office. As you well know, the reviews are also handled by ICE employees other than at the Chicago DRO office. Please comply with the request by producing the requested documents as maintained in each and every office.

As for Request 7, you object, *inter alia,* to the dates. We are willing to modify the request to included only the years 2002 through 2006. We differ with your contention that post-incident documents are not discoverable. See, *Conn v. City of Reno*, 572 F.3d 1047, 1065 (9th Cir. 2009) (evidence of subsequent remedial steps to prove the failure to adopt and implement suicide policies admissible); *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986).

As for Requests 17 and 18, you limit your production to documents maintained by the DHS Chicago Office of Inspector General. Again, the request is not limited to documents maintained by the Chicago OIG office, and the production should not be so limited.

In response to Request 23, you again limit your production to documents maintained by

Page Three, Letter to Mallory
April 21, 2010; *Belbachir v. U. S.*

ICE Chicago DRO office. If, by your answer, you mean to represent that there are no responsive documents other than those at the Chicago DRO office, kindly so state. Otherwise, you are under an obligation to disclose all the requested documents.

In response to Requests 8, 9, 10, 16-20, 24, 25, 28-30 and 32, you repeat the phrase "investigation continues." Please complete your investigation and provide all responsive documents. This phrase is an improper discovery response, and Plaintiff is entitled to receive all responsive documents well in advance of the discovery cut off deadline. See, e.g., *Johnson v. Kakvand*, 192 F. 3d 656 (7th Cir. 1999)(a party's use of "investigation continues" was seen as part of its strategy to "resist and frustrate discovery"); *Donnelly v. NCO Fin Sys*, 263 F. R. D. 500 (N.D. Ill. 12/16/09)(plaintiff entitled to all documents in time to review them well in advance of discovery close); *Happel v. Wal-Mart*, 2006 U.S. Dist. LEXIS 10837 (N.D. Ill. 3/8/06)("Investigation continues" is not a final or responsive discovery answer).

In response to Request 33, you reference your response to Request 23, where you limited your production of documents to those maintained by ICE Chicago DRO office. If, by your answer, you mean to represent that there are no responsive documents other than at the Chicago DRO office, kindly so state. Otherwise, you are under an obligation to disclose all requested documents. Further, we agree to narrow the request to minutes for meetings that took place from 2002 through 2005.

We ask that you reconsider your blanket objection to Request 34, and produce the requested documents concerning correspondence related to McHenry County Jail. Further, we agree to narrow the request to documents from 2002 through 2005.

We also ask that you reconsider your blanket objection to Request 35, and produce the requested documents concerning compliance with disability law. Further, we agree to narrow the request to documents from 2002 through 2005.

In Request 36, we ask for documents relating to any grievances from ICE detainees held at McHenry County Jail. We ask that you reconsider your overly broad objection. As you know our motion to compel McHenry County to produce similar grievances in its possession was granted in *Belbachir v. McHenry County, et al.*, No. 06 C 1392. (Dkt. 99, Order of Judge Mahoney, 5/14/07) We agree to narrow the scope of this request to grievances regarding medical or mental health care from 2002 through 2005.

As to Request 37, please clarify your response. If, by your answer, you mean to represent that there are no responsive documents other than what you have produced, kindly so state. Otherwise, you are under an obligation to disclose all requested documents. Further, we agree to narrow the request to documents from 2002 through 2005.

Finally, as to Request 38, we ask that you reconsider your blanket objection to producing

Page Four, Letter to Mallory
April 21, 2010; *Belbachir v. U. S.*

any personnel files or disciplinary histories. This request is obviously relevant to particular individuals and their bias, motives as well as impeachment. Further, we agree to limit this request to the following individuals: Deborah Achim, Dan Bobak, Michael Boland, Brent Kriehn, Brad Lister, Sean Nagel, Dan Rodriguez, Jovanka Thompson, Glenn Triveline and William Wennberg.

Please provide your response by close of business on April 28, 2010, or we will be forced to proceed with a motion to compel.

Very truly yours,

Janine L. Hoft
Jan Susler
Attorneys at Law

cc:     Attorneys Casson & Reliford

# PEOPLE'S LAW OFFICE

**1180 N. Milwaukee
Chicago, Illinois, 60642
(773) 235-0070
Fax (773) 235-6699**

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Sarah Gelsonimo
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.

*Of Counsel*
Jeffrey H. Haas

May 14, 2010

AUSA Monica Mallory
United States Attorney's Office
308 W. States St., Suite 300
Rockford, IL 61101

Re:     *Belbachir v. U. S.,* 08-50193, *Via electronic mail*

Dear Counsel:

We again write to you pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2 in order to resolve all outstanding fact discovery issues by the June 1, 2010 cut off. Thank you for your April 26, 2010, response to our Rule 37 letter of April 16, 2010 and your April 29, 2010, response to our concerns about the production of documents by the United States and the failure to produce all sequentially bate stamped documents. We are also in receipt of your "first supplements" to Plaintiff's Requests for Production of Documents and Interrogatories, dated April 23, 2010. The United States has failed, however, to respond to our Rule 37 concerns raised in our letter of April 21, 2010.

First of all, we seek production of *all* documents bate stamped by the United States "5019308" - 1 through 2944 to date. In your April 29, 2010, response to our inquiry regarding the failure to produce certain bate stamp documents, you have identified three categories of documents that will not be produced. You indicate some documents have already been produced under different bate stamp numbers or previously produced by other parties. While we appreciate you desire to not duplicate copying, other documents have been duplicated multiple times, and we must insist that we receive all documents bate stamped by the United States. Further, you also indicate some documents have not been produced because they are either "not responsive to any pending request" or "may be protected by privilege." We have requested all documents related to this case, and specifically request those bate stamped documents at this time. For those documents for which you are claiming a privilege you must provide us with a privilege log in compliance with Fed. R. Civ. P. 26(b)(5).

As we have referenced in our previous letters, we must insist that you conclude your investigation and provide all responsive discovery. We understand from your April 26, 2010, letter that no video or computer disk containing downloaded video of Ms. Belbachir or her property has been located. As we requested in our April 16, 2010, letter, please identify the chain of custody, the date and under what circumstances it was lost, misplaced or destroyed as well as the last known custodian. Also, we disagree with your assertion that documentation regarding the McHenry County Jail's inability to "separate all detainee classification levels (1, 2,3) due to a

Page Two, Letter to Mallory
May 14, 2010; *Belbachir v. U. S.*

lack of space" is not reasonably calculated to lead to relevant evidence. Communication between the United States and McHenry County regarding the Jail is relevant to notice and to knowledge on the part of employees of the United States that the Jail was not complying with appropriate standards and safety concerns. We ask that you reconsider and produce the requested documents.

In our letter of April 21, 2010, we set out in specific detail the outstanding issues with regard to the production of documents. We have received no response, and therefore must assume that you are not interested in resolving these outstanding discovery issues and will proceed with a motion to compel the items set forth in that letter.

Further, in a 9/26/05 memorandum produced under bate stamp 5019308-001932 there is a reference to a "Headquarters Special Assessment conducted in April also found the Health Services Standards to be At-Risk." Please produce this April assessment or identify the bate stamp number, in the event you have previously produced it.

Finally, as to the remaining depositions, all parties have agreed to complete the depositions of Chris McDaniels (5/25/10), Michael Boland (5/26/10) and Brent Kreihn (6/17/10). You have requested that we explain the reasons for deposing Dan Young of the Office of Inspector General. While we do not concede that we are required to identify specific matters that will be the subject of our deposition inquiries, in the interest of resolving this issue without court intervention, we state the following: Dan Young was the sole OIG investigator consistently present for all the interviews conducted in the OIG's investigation of Ms. Belbachir's death. While the OIG report is undoubtedly admissible under Rule 803(8), Federal Rules of Evidence, an inquiry into Young's investigative process is warranted. See, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988). There is no legitimate justification— nor have you even offered any justification— for not proceeding with Young's deposition. Mr. Young's investigative report contains multiple statements of witnesses and may be used to refresh recollection or to impeach witnesses at trial. Mr. Young is required to not only authenticate the document but also to confirm that the statements contained therein were made by the respective witnesses. Further, Mr. Young's testimony will contain additional facts relevant to this litigation, specifically including factual findings made by a public office or agency resulting from an investigation made pursuant to authority granted by law. [See, Fed. R. Evid. 803(8)].

Thank you in advance for your attention. Please provide us with your response no later than May 20, 2010, or we will have no choice but to proceed with a motion to compel.

Very truly yours,

Janine L. Hoft
Jan Susler
Attorneys at Law

cc:     Attorneys Casson & Reliford

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF HASSIBA BELBACHIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 1392 |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| UNITED STATES, | ) | |
| | ) | Magistrate Judge P. Michael Mahoney |
| Defendant. | ) | |

PLAINTIFF'S MOTION TO COMPEL UNITED STATES
TO FULLY ANSWER PLAINTIFF'S DISCOVERY AND
PRODUCE DEPONENT DAN YOUNG

# Exhibit E

*Office of Inspector General - Investigations*
**U.S. Department of Homeland Security**

**REPORT OF INVESTIGATION**

 **Homeland Security**

| | |
|---|---|
| *Case Number:* | I05-ICE-CHI-08177 |
| *Case Title:* | Hassiba Belbachir |
| | Algerian National |
| *Report Status:* | Final |
| *Alleged Violation(s):* | 18 USC 242, Deprivation of rights under color of law |

## SYNOPSIS

On March 24, 2005, the Department of Homeland Security (DHS), Office of Inspector General (OIG), received information that Hassiba Belbachir, an Algerian National, died of suspected suicide while in Immigration and Customs Enforcement (ICE) custody at the McHenry County Correctional Center (MHCCC), 2200 North Seminary Avenue, Woodstock, IL, contract facility located in Illinois.

The OIG investigation determined that Belbachir had entered the U.S. under the Visa Waiver Program and had overstayed her required departure date. On March 8, 2005, Belbachir was taken into custody by U.S. Customs and Border Protection (CBP) officers at O'Hare International Airport, Chicago, Illinois, and thereupon filed a petition for political asylum. Belbachir was turned over to ICE and transported to MHCCC pending an immigration hearing.

On March 13, 2005, Belbachir was moved to the medical section (Med Pod) at MHCCC after complaining for two days of symptoms associated with what was diagnosed by MHCCC authorities as panic attacks. On March 14, 2005, Belbachir received a mental health evaluation at MHCCC, during the course of which she expressed suicidal ideations.

On March 17, 2005, at approximately 4:10 p.m., Belbachir was discovered unconscious in her cell with two MHCCC issued socks tied around her neck. MHCCC personnel and emergency service personnel attempted to resuscitate Belbachir without success. She was transported to Centegra Memorial Medical Center, Woodstock, IL, and pronounced dead.

| *Reporting Agent* | | | *Distribution:* | |
|---|---|---|---|---|
| Name: ██████ | Signature: | | ...go Field Office | Original |
| Title: Special Agent | Date: | | | |
| *Approving Official* | | | ...quarters | 1 cc |
| Name: Thomas M. Frost | Signature: *for Thomas Frost* | | Component(s) | 1 cc |
| Title: Special Agent in Charge | Date: 8/1/06 | | Other | cc |

b6,7C

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

I04-ICE-CHI-08177

P. 1389

# REPORT OF INVESTIGATION

On March 18, 2005, an autopsy conducted by the McHenry County Coroner's office concluded that Belbachir's cause of death was asphyxia due to ligature strangulation, self-inflicted. On July 27, 2005, an Inquest into the manner and cause of death of Belbachir was held in McHenry County. The jury returned a verdict that Hassiba Belbachir had committed suicide.

Investigation by the OIG revealed that MHCCC and ICE policies and procedures governing the handling of potentially suicidal ICE detainees were not adhered to due to failures by employees of Centegra, the contract health care provider, MHCCC and ICE personnel to communicate Belbachir's status and condition.

## DETAILS

On March 24, 2005, the Department of Homeland Security, Office of Inspector General (OIG) received information from the ICE, Joint Intake Center that Hassiba Belbachir, an Algerian national who was being detained by ICE, had been discovered unconscious with two socks tied around her neck in a female Medical Unit cell at the McHenry County Correctional Center (MHCCC), Woodstock, IL, at approximately 4:10 p.m. on March 17, 2005. Belbachir had been transported to a local hospital where she was pronounced dead of an apparent suicide. (Exhibit 1)

On March 25, 2005,                           , U. S. Customs and Border Protection (CBP), was interviewed by the OIG regarding the events surrounding the detention and death of Belbachir.           provided the OIG with a copy of a Significant Incident Report (SIR) dated March 18, 2005, that was prepared by                   , CBP, Chicago, IL. The SIR reported that on March 18, 2005,                , ICE, Chicago, IL, notified the CBP Office that Belbachir had apparently committed suicide on March 17, 2005, while in the custody of the McHenry County Sheriff's office awaiting a deportation hearing.

**b6, 7C**

The SIR indicated that Belbachir had entered the U.S. at JFK Airport, New York, NY, on November 24, 2004, presented a French passport, and was admitted under the Visa Waiver Program until February 22, 2005. The SIR continued that on February 27, 2005, Belbachir departed the U.S. via United Airlines Flight 938 to Manchester, England. Upon her arrival, British authorities identified her French passport as stolen and fraudulent. Belbachir subsequently requested asylum, which was denied, and she was returned to the U.S. on United Airlines flight #959 arriving at Chicago O'Hare Airport on March 8, 2005. According to the SIR, Belbachir was not considered for admission into the U.S. since she had overstayed her visa. The SIR documented that Belbachir gave a sworn statement seeking political asylum in the U.S. claiming fear of         . Belbachir was detained for "credible fear and deportation hearings." The SIR also stated "No indication of depression or ownership of prescription medication was discovered by CBP Chicago during the

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-04                                             105-ICE-CHI-08177

# REPORT OF INVESTIGATION

question and answer with Belbachir." The SIR indicated that on March 9, 2005, Belbachir was turned over to ICE, Detention and Removal (DRO) and transported to the MHCCC. (Exhibits 2 and 3)

On May 4, 2006, ███████████, Stone Park Police Department (SPPD), was interviewed by the OIG reference the housing of Belbachir at the Stone Park Police Department. ███ explained SPPD is a contracted temporary detention facility (less than seventy-two hours) for Immigration and Customs Enforcement (ICE). ███ stated that on March 8, 2005, at approximately 11:30 p.m., SPPD received Hassiba Belbachir. ███ explained that a U.S. Department of Justice, Immigration and Naturalization Service Form I-203A (I-203) is generated for all aliens placed in their custody. SPPD uses the I-203 as supporting documentation when billing ICE for housing an ICE detainee. ███ continued that an Immigration and Naturalization Service Prisoner Housing Report (INSPHR) is also maintained. According to ███, SPPD generated a form I-203 to document Belbachir's custody and she was logged in on the SPPD Daily Radio Log.

A review of the INSPHR and SPPD Daily Radio Log for March 9, 2005, was conducted by the OIG and revealed documentation that at approximately 2:48 a.m., Belbachir was transported by a Stone Park Fire Department Ambulance to Gottlieb Memorial Hospital for an unknown medical condition. The SPPD Daily Radio Log also documented that SPPD received a telephone call, at approximately 3:37 a.m., from ICE, Detention and Removal (D&R), ███████████ reference Belbachir being transported to the Hospital. The INSPHR and SPPD Daily Radio log reflect Belbachir returning to the SPPD the same morning at 6:09 a.m. The I-203 indicates Belbachir was released to ███████ ████████████████ on March 9, 2005, at 7:00 a.m. (Exhibits 4-7)

On May 12, 2006, ███████████████████████ Immigration and Customs Enforcement (ICE), was interviewed by the OIG. ███████ recalled taking custody of Hassiba Belbachir from SPPD on March 9, 2005, and transporting her to the ICE Broadview (IL) Detention Facility. ███████ explained ███ processed Belbachir by inventorying her personal property (i.e. clothing), completing a U.S. Immigration and Naturalization Service Detainee Classification System Primary Assessment Form (Inmate Screening/Classification Form) and providing her with government issued clothing (green jump suit).

███████ stated that most detained aliens arrested at O'Hare International Airport do not speak English, and that ███ assumed Belbachir did not speak English. ███████ confirmed that ███ filled out the Inmate Screening/Classification Form utilizing information contained in Belbachir's Detention File, not by interviewing her. The Inmate Screening/Classification Form contains a section for medical, mental health and other concerns pertaining to the detainee. This section on Belbachir's form was left blank. ███████ explained that a detainee's mental health or medical information is related to transporting detention officers and the receiving correctional facility by documenting the information on the I-203. ███████ claimed that ███ was never informed Belbachir had been in the

b6, 7C

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08                                                                 R5-ICE-CHI-08177

REPORT OF INVESTIGATION



hospital the morning ███ took custody of her, and that no record of her medical or mental condition was included on, or attached to, the I-203 from SPPD or conveyed in any other manner. ██████ further stated ███ was never told by any of ███ supervisors that Belbachir had been hospitalized. ████ stated because of ███ lack of knowledge, the information concerning Belbachir's hospitalization on March 9, 2005, was not conveyed on the I-203 transferring her to McHenry County Correctional Center (MCHCCC). (Exhibit 9)

On May 19, 2005, ████████████████, DRO, Broadview, IL, was interviewed by the OIG. ████ stated that on March 9, 2005, Belbachir was processed at the Broadview Detention Facility. According to ████ the processing consisted of obtaining information (including suicide risk) from the ICE databases to complete a U.S. Immigration and Naturalization Service Detainee Classification System Primary Assessment Form (Inmate Screening/Classification Form). ████ stated that after Belbachir's processing, she was transported to the MHCCC. ████ reported ICE Detention and Removal (D&R) was never notified of any problems or concerns with Belbachir. ████ stated that once a detainee reaches a contracted detention facility, the Broadview Detention Facility is not routinely notified of any medical and/or psychological problems the detainee may have unless the condition is considered serious. On March 18, 2005, ██████████ ████████, U.S. Immigration and Customs Enforcement, contacted the ICE Broadview Detention Facility in reference to Belbachir's death. Following this notification, ████ was assigned the duty of finding Belbachir's next of kin and notifying them of her death. (Exhibit 10)

On March 25, 2005, the OIG examined ICE's 2004 Annual Detention Review of the McHenry County Correctional Center dated July 14-15, 2004. The ICE review gave the MHCCC facility an overall rating of "acceptable." Under the remarks section of sub-section "Suicide Prevention and Intervention" (page 45), the following comment was noted, "McHenry County Jail provides written suicide prevention protocols in an interoffice memorandum dated 07/31/03. A draft policy specifically designed to integrate facility standards with Centegra policy and DMCP standards currently exists in draft form, and has been forwarded for managerial approval." (Exhibit 11)

The OIG requested a copy of the July 31, 2003, interoffice memorandum from ICE ████████ ████████████████, and MHCCC████████████████████ referenced above. Neither party was able to produce copies of the policies and standards they claimed were in draft form. (Exhibits 12-13)

On March 29, 2005, ICE Headquarters Office of Detention and Removal issued a Significant After Action Review (SAAR), which concluded that MHCCC was at "risk," and was not to house suicidal detainees. Contained in the SAAR, under sub-section "Suicide Prevention and Intervention" (page 9), finding number 3 states: "No written procedure that defines the process to place an at-risk detainee on suicide watch and remove them from suicide watch." (Exhibit 14)

b6, 7C

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-01                                                                                                    IGS-ICE-CHI-01177

P. 1392

## REPORT OF INVESTIGATION

On March 31, 2005, ▓▓▓▓▓▓▓▓▓▓▓▓▓, MHCCC, McHenry, IL was interviewed by the OIG. ▓▓▓ reported that on March 9, 2005, ▓▓▓ completed the intake screening process for Belbachir. ▓▓▓ reported the process included taking Belbachir's fingerprints and photograph, completing an Intake Screening Form, and generating an identification card. ▓▓▓▓▓▓▓▓▓▓▓ during the intake process ▓▓ asked Belbachir if she had ever considered suicide, and she responded *yes*. ▓▓▓ indicated on Belbachir's Intake Screening Form, Belbachir's reported attempted suicide in 2000 due to depression. ▓▓▓ reported that Belbachir giggled and replied, "no" when ▓▓ asked if she was currently extremely depressed or feeling suicidal. ▓▓▓ recalled Belbachir being in a good mood. ▓▓▓ stated Belbachir was assigned to the E-POD with the other female ICE detainees. (Exhibits 15-16)

On September 9, 2005, ▓▓▓▓▓▓▓▓▓▓▓▓, Centegra Health System, the contract health care provider for MHCCC, was interviewed by the OIG. ▓▓▓ reported that on March 12, 2005, ▓▓ was requested to respond to E-Pod to examine Belbachir who appeared to be having an anxiety attack. ▓▓▓ stated that with the help of the "language line" interpreter ▓▓ was able to ask Belbachir questions about her condition. ▓▓▓ explained the language line is used when medical and/or correctional personnel are having difficulty communicating with a detainee. ▓▓▓ stated Belbachir understood English, but felt most comfortable speaking French. ▓▓▓ determined that Belbachir was suffering from stress and panic attacks. ▓▓▓ stated that ▓▓ recommended that ▓▓▓, the Centegra Health System Psychiatrist, be contacted and apprised of Belbachir's condition; that ▓▓▓▓▓▓▓▓▓, the ▓▓▓▓▓▓▓▓▓▓▓, evaluate Belbachir; and that a roommate be assigned to Belbachir's cell.

▓▓▓ stated that on March 13, 2005, Belbachir again complained of symptoms consistent with a panic attack. ▓▓▓ said that ▓▓ had Belbachir transferred from general population to the booking area, so she could be under constant supervision. ▓▓▓▓▓▓▓▓ then requested and received permission from MHCCC ▓▓▓▓▓▓▓▓▓ to transfer Belbachir to Med Pod. ▓▓▓ also requested permission to allow Belbachir to call a relative. ▓▓▓ was not sure whom Belbachir called. (Exhibit 17)

On March 31, 2005, ▓▓▓▓▓▓▓▓▓▓▓▓, Centegra Health System, was interviewed by the OIG. ▓▓▓ stated that on March 14, 2005, ▓▓ completed a Mental Health evaluation of Belbachir and determined that Belbachir was suffering from depression, with a Global Assessment of Functioning (GAF) score of 50. ▓▓▓ explained that a score of 50 on the GAF is average. ▓▓▓ stated that Belbachir told ▓▓ that she was suicidal, but did not articulate a plan of action. ▓▓▓ stated that ▓▓ asked Belbachir if she was going to hurt herself, and Belbachir replied *no*. According to ▓▓▓▓▓▓ because of Belbachir's GAF score and lack of a suicide plan, it was ▓▓ opinion that Belbachir was not going to hurt herself. ▓▓▓▓▓ said that for this reason, Belbachir was not placed on a suicide watch and was allowed to remain in the Med Pod.

b6, 7C

### IMPORTANT NOTICE
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08                                                                  185-ICE-CHI-08177

# REPORT OF INVESTIGATION

███████████████ recommended that Belbachir see ██████████████████████, on March 18, 2005. ███████ explained that had ██████ diagnosed Belbachir as suicidal, according to Centegra and McHenry County Sheriff Department's written procedure for suicidal inmates and detainees, she would have been placed on suicide watch and correctional officers would have been ordered to physically observe her every ten minutes. (Exhibit 18-19)

On May 12, 2005, ███████████████████████ MHCCC, was interviewed by the OIG. ██████ stated that upon arriving at MHCCC, Belbachir was issued the standard MHCCC clothing and bedding items: one (1) complete uniform, one (1) t-shirt, two (2) pair underpants, one (1) bra, two (2) pair of socks, one (1) towel, one (1) washcloth, one (1) pillowcase, one (1) sheet and one (1) blanket. ███████ stated that ██████ informed ██ verbally that Belbachir was having anxiety attacks and requested authorization to move Belbachir to the Medical Pod (Med Pod). ██████ stated that █ granted the request and Belbachir was transferred to the Med Pod. ██████ stated that █ did not receive any further input in reference to Belbachir, until █ was informed that Belbachir had committed suicide. ██████████ stated that the correctional officers are dependant on the medical staff to make recommendations for placing inmates and detainees on suicide watch. ██████ related that █ typically does not receive a copy of the Mental Health Progress Notes unless there is a problem, and conceded that if █ had received a copy of ███████████ report on Belbachir, █ would have placed Belbachir on suicide watch. (Exhibit 13)

On March 31, 2005, ████████████, a MHCCC inmate, was interviewed by the OIG. ██████ stated █ related that sometime after █ had arrived to the Med Pod, Belbachir was moved ██████████ ████ #178. ██████ explained the Med Pod is "locked down" from 10:30 p.m. until 5:00 a.m. daily, as well as during prisoner count. ████████ a small common area, but were allowed to stay in their respective cells with the door closed if they wanted. ██████ reported that ██ and Belbachir talked all the time and on approximately March 12, 2005, Belbachir told ██ "if I wanted to commit suicide, I can do it here." ████████████ did not think Belbachir was serious, and did not tell anyone of the statement. ████████ stated that on March 17, 2005, at approximately 1:30 p.m., ██████ received commissary, and Belbachir became upset that she did not. ██████ recalled that Belbachir went into her cell and closed the door after herself. ████████████ heard Belbachir crying until approximately 3:30 p.m.

██████████ reported that at approximately 4:00 p.m., following the prisoner count, when their cell doors opened to receive dinner, ██████ recalled seeing Belbachir on the floor in her cell. ██████ thought Belbachir was asleep until one of the correctional officers attempted to wake her. ██████ stated that ██ observed that Belbachir's face was purple. ██████ stated that █ heard the nurse order the officer to call 911. (Exhibit 20)

*b6, 7C* (left margin)

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

JNY FORM-66                                                                     105-ICE-CHI-08177

P. 1394

## REPORT OF INVESTIGATION

On March 31, 2005, ███████ MHCCC Officer, was interviewed by the OIG. ███ stated that on March 17, 2005, at approximately 3:40 p.m. ███ visually checked Belbachir's cell. ███ looked through the rectangular cell door window and observed Belbachir lying on the floor with her head towards the door, but he could not see her face. ███stated that when███ mentioned to Officers ███████ that Belbachir was sleeping on the floor, ███ was informed that it was normal behavior for her. ███ stated that ███went back and tapped on Belbachir's cell door and ███observed that she moved her leg.

███stated that at approximately 4:10 p.m., ███sed the intercom to see if Belbachir wanted dinner. ███ stated that ███ did not receive a response from Belbachir, ███got a dinner for her and unlocked the cell doors in the Med Pod. ███ said that ███entered the female side of the Med Pod and observed Belbachir lying face down on the floor of her cell ███ attempted to wake Belbachir by yelling, but ███ did not get a response and realized there was a problem. ███said that ███called a Code 3 medical broadcast over the MHCCC radio system. ███████tated that when ███ attempted to get a response from Belbachir by shaking her arm, ███observed blood on the floor. According to ███, Officer ███ and Centegra Nurse ███████ were the first to respond. ███████ rolled Belbachir over to discover she was unconscious with two MHCCC issued socks tied around her neck. ███ removed the socks and then ███████ attempted to resuscitate Belbachir by attaching an AED machine and commencing rescue breathing. Emergency services were contacted and arrived within minutes.

███ stated that when an officer has medical concerns or special instructions regarding an inmate or detainee, ███ would post the information in the Officers Station of the Med Pod. ███acknowledged that there was no information posted regarding Belbachir. ███stated that if Belbachir had been placed on suicide watch, there would have been visual checks done every ten minutes, as well as any additional requirements discussed at Roll Call and/or posted in the Med Pod. ███stated that the officers assigned to the Med Pod do not have access to the inmate's or detainee's medical records and are not routinely briefed by the medical staff of the inmate's or detainee's condition unless there is a concern. (Exhibit 21)

On May 12, 2005, ███████, McHenry County Sheriff's Detective was interviewed by the OIG. ███ stated ███ was contacted on March 17, 2005, by the McHenry County Communication Center and informed that an Immigration and Customs Enforcement (ICE) detainee had attempted to commit suicide. ███████ responded to the MHCCC Med Pod. ███ stated Belbachir had been transported to Centegra Memorial Medical Center, 3701 Doty Road, Woodstock, Illinois, where she was pronounced dead. ███████ initiated their investigation by viewing Med Pod cell #178. The investigators observed a small amount of blood and a pair of MHCCC issued orange socks, which were tied together, on the floor. As the lead investigators, ███████ supervised the collection of physical evidence and taking of statements. ███████ provided the OIG with a translated copy of Belbachir's writings recovered from her cell and a copy of the McHenry

b6, 7C

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

DHS FORM-08                                                                                    I05-ICE-CHI-04177

## REPORT OF INVESTIGATION

County Sheriff's Office Incident Report #05-05944. ▆▆▆▆ stated that all the evidence inventoried and the statements taken were consistent with Belbachir committing suicide. (Exhibits 22 thru 24)

On May 12, 2005, ▆▆▆▆▆▆, McHenry County Coroner Deputy Investigator (DI) was interviewed by the OIG. ▆▆▆▆ stated that on March 17, 2005 ▆ was contacted by the McHenry County Sheriff's Office and advised that Belbachir had died and was at Centegra Memorial Medical Center. ▆▆▆▆ stated that ▆ went to the medical center and took custody of Belbachir's remains. ▆▆▆▆ stated that ▆ observed marks on Belbachir's neck and right arm, which were consistent with those made while attempting to resuscitate an individual. The only other mark ▆▆▆▆ recalled seeing was a small bruise (approximately 3 cm x 2 cm) on Belbachir's right forearm. ▆▆▆▆ stated Belbachir's body was carefully placed in a body bag and transported by a local funeral home to the coroner's office and secured at the morgue.

▆▆▆▆ stated that on March 18, 2005, ▆ was present when ▆▆▆▆▆▆ M.D., Forensic Pathologist, conducted an autopsy of Belbachir. The Pathologist's autopsy findings concluded that Belbachir's death was asphyxia due to ligature strangulation, self-inflicted. According to ▆▆▆▆, there were no signs of abuse. ▆▆▆▆ provided the OIG with copies of Belbachir's autopsy, autopsy photographs and toxicology report, which was negative. (Exhibits 25 thru 27)

b6,7C

On May 19, 2005, ▆▆▆▆▆▆, Immigration Enforcement Agent (IEA), ICE, was interviewed by the OIG. ▆▆▆▆ stated that on March 21, 2005, ▆ was present when Belbachir's property, inventoried by ICE on March 9, 2005, was returned to ▆▆▆▆. The items returned included clothes, luggage, a laptop computer and other valuables. (Exhibit 28)

On July 27, 2005, the OIG attended an Inquest into the manner and cause of Belbachir's death at the McHenry County Coroner's Office, Woodstock, Illinois. The jury was provided with testimony and photographs of the evidence surrounding Belbachir's death. The jury deliberated and returned a verdict that Belbachir had committed suicide. (Exhibit 29-30)

On July 29, 2005, the OIG obtained a Certified Copy of Belbachir's Death Certificate from the McHenry County Clerk's Office. The Death Certificate states the cause of death was asphyxia by ligature strangulation. (Exhibit 25)

The OIG investigation determined that Belbachir's arrest and detention by CBP and ICE was appropriate and legal. The OIG investigation did not reveal any information to contradict the findings of the Autopsy, the McHenry County Sheriff's Office investigation, or the McHenry County Coroner's Inquest, that Belbachir's death was a suicide. No evidence was developed to suggest that Belbachir had been physically abused.

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08                                                                 DIS-ICE-CHI-06177

P. 1396

## REPORT OF INVESTIGATION

The investigation did determine that there was a lack of communication between ICE, MHCCC, and the contract health provider, Centegra Health System, concerning Ms. Belbachir's condition. This communication lapse may have negatively impacted the ability of the staff to implement safeguards to ensure the safety of a detainee who has suicidal ideations.

The OIG investigation failed to disclose the existence of a written suicide policy for the MHCCC, as is required by ICE. The OIG examination of the ICE report documenting the July 14-15, 2004, review of the MHCCC, and interview of its author, failed to produce evidence of such a policy. ICE officials were unable to produce any documentation of their prior receipt or review of this policy as was claimed in their report.

**IMPORTANT NOTICE**

This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-05                                                                                       105-ICE-CHI-08177